

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103217 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | 1311-CR05915-01 |
| | ) | |
| MICHAEL L. JOHNSON, | ) | Honorable Jon A. Cunningham |
| | ) | |
| Appellant. | ) | Filed: December 20, 2016 |

## OPINION

Michael L. Johnson was found guilty by a jury in the Circuit Court of St. Charles County of one count of the class A felony of recklessly infecting another with human immunodeficiency virus ("HIV"), one count of the class B felony of recklessly exposing another person to HIV, and three counts of the class C felony of attempting to expose another person to HIV. Johnson was sentenced to concurrent terms for the offenses: 30 years in prison for the class A felony, 14 years for the class B felony, and five and a half years each for the three class C felonies. Johnson appeals asserting two points of error: (1) that the trial court abused its discretion by admitting excerpted recordings of phone calls Johnson made while in jail that were not disclosed to the defense until the morning of the first day of the trial, and (2) that Johnson's sentence of 30 years in prison for recklessly infecting another with HIV was grossly disproportionate to the crime and violated the constitutional prohibition on cruel and unusual punishments. Because we find that the trial court

abused its discretion with respect to Johnson's first point on appeal, we reverse and remand for a new trial.

## Factual and Procedural Background

In 2012, Johnson moved to St. Charles, Missouri, from Indianapolis, Indiana, to attend Lindenwood University, which had recruited him for its wrestling team. On January 7, 2013, Johnson visited the student health clinic at Lindenwood complaining of perianal warts and asked to be tested for sexually transmitted diseases (STDs). The tests run by the clinic showed that Johnson had gonorrhea and was HIV positive.

On January 26, 2013, Johnson and D.K.-L., a fellow Lindenwood student, engaged in unprotected oral and anal sex. D.K.-L. testified at trial that Johnson did not disclose to D.K.-L. that he was HIV positive. About two weeks later, D.K.-L. went to a hospital emergency room with severe stomach pain and a high fever. Tests revealed that he had contracted gonorrhea and was HIV positive. The HIV diagnosis was confirmed by subsequent testing on February 13, 2013, and doctors informed D.K.-L. that it was likely a recent infection. D.K.-L. testified that prior to his hospitalization, Johnson had been his most recent sexual partner, and that because he had not engaged in sexual relations with anyone else for a year, Johnson was the only person who could have infected him with HIV.

D.K.-L. contacted Johnson to inform him of his HIV diagnosis. They met in Johnson's dorm room, where D.K.-L. stated that he was HIV positive. D.K.-L. testified that after being informed of the diagnosis, Johnson again engaged in sexual intercourse with D.K.-L. without disclosing to D.K.-L. that he too was HIV positive.

Months later, D.K.-L. noticed that Johnson was continuing to use social networking and dating internet applications like the one they had used to meet one another, but was not disclosing

2

on the applications that he was HIV positive. At that point, D.K.-L. decided to contact the St. Charles Police Department.

As a result of the department's investigation into Johnson's sexual encounters with D.K.-L., and into his sexual encounters in St. Charles with five other persons who also came forward, Johnson was arrested and charged with two counts of the class A felony of recklessly infecting another person with HIV, one count of the class B felony of recklessly exposing another person to HIV, and three counts of the class C felony of attempting to expose another person to HIV. Johnson was tried before a jury in May 2015.

At trial, Johnson admitted that on January 7, 2013, he was informed that he was HIV positive. As a result, the critical issue at trial was whether Johnson disclosed his HIV status to his sexual partners who had come forward as victims. Each of them testified that Johnson never disclosed his status; Johnson, however, testified that he had informed each of them prior to engaging in sexual relations, except for the one partner with whom he testified he had not had sexual relations after November 2012, more than a month before he was informed on January 7, 2013 that he had tested positive for HIV. The State impeached Johnson's testimony by playing excerpts from recordings of phone calls he made while in jail that it argued cast doubt on whether he made the disclosures he claimed to have made.

But the State had not disclosed the recordings to Johnson until, effectively, the first day of trial, Monday, May 11, 2015. Although the State had delivered the recordings to defense counsel's office on the Friday before trial began, the office was closed that Friday for a state holiday and the State did not notify the defense of the delivery. This was approximately a year and a half after Johnson had on November 26, 2013, served on the State his Rule 25.03 discovery request for "[a]ny written or recorded statements and the substance of any oral statements made by the

3

defendant[.]" The 24 hours of recordings that the State disclosed on the first day of trial were made over a period of about two years, and the clips the State planned to play from them were recorded on October 17, 2013, and November 23, 2013.

The jury acquitted Johnson of one of the charges of the class A felony of recklessly infecting another with HIV, which related to his sexual conduct with the partner with whom he claimed not to have had relations after being informed in January 2013 of his HIV-positive diagnosis. However, the jury convicted Johnson of all the other charged offenses. Johnson was sentenced to the following concurrent terms for the offenses: 30 years in prison for the class A felony against D.K.-L., 14 years for the class B felony, and five and a half years each for the three class C felonies. This appeal follows.

## Discussion

In his first point on appeal, Johnson contends that the trial court erred by admitting the excerpted recordings of the phone calls Johnson made while in jail that the State did not disclose to the defense until the morning of the first day of the trial. Johnson argues that the State's disclosure of the recordings was untimely under Missouri Supreme Court Rule 25.03[1] and rendered his trial fundamentally unfair.[2] We agree.

---

[1] All rules references are to Missouri Supreme Court Rules (2016) unless otherwise indicated.
[2] Without specifically referencing Rule 25.03, Johnson objected at trial on grounds of untimely disclosure and included the objection in his motion for a new trial. Under Missouri Supreme Court precedent, we find that Johnson has sufficiently preserved this point for review. Rule 78.07(a). We reject the State's argument that by neglecting to specifically reference Rule 25.03, Johnson failed to preserve this issue for appeal, because "trial judges are presumed to know the law and to apply it in making their decisions." *State v. Amick*, 462 S.W.3d 413, 415 (Mo.banc 2015). As the Missouri Supreme Court noted in *Amick*, our rules for preservation of error for review are applied not to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant, but to enable the court—the trial court first, then the appellate court—to define the precise claim made by the defendant. *Id.* (citing *State v. Pointer*, 887 S.W.2d 652, 654 (Mo.App.W.D. 1994)). Thus, where a defendant's objection "plainly and unequivocally" informed the trial court of the defendant's position that a particular decision or action of the court

4

Rule 25.03 provides that the State shall, upon written request by defendant's counsel, disclose to the defense certain classes of materials and information within the State's possession or control that are designated in such request, including any written or recorded statements and the substance of any oral statements made by the defendant. *State v. Henderson*, 410 S.W.3d 760, 764 (Mo.App.E.D. 2013) (citing Rule 25.03(A)(2)). Requests shall be answered within ten days after service of the request. Rule 25.02. The rule establishes an ongoing duty requiring the State to supplement its response in the event it acquires or learns of additional responsive material. *See* Rule 25.08. The duty to disclose includes not only information actually known by the State, but also information it may obtain through reasonable inquiry. *State v. Smith*, 491 S.W.3d 286, 298 (Mo.App.E.D. 2016) (citing *State v. Mabry*, 285 S.W.3d 780, 787 (Mo.App.E.D. 2009)).

The purpose of Rule 25.03 is to grant the defendant a decent opportunity to prepare his case in advance of trial and avoid surprise. *Id.* at 297. The broad rights of discovery afforded criminal defendants by Rule 25 have constitutional underpinning rooted in due process, *State v. Wilkinson*, 606 S.W.2d 632, 636 (Mo.banc 1980), and simple justice requires that the defendant be permitted to prepare to meet what loom as the critical elements of the case against him. *State v. Johnston*, 957 S.W.2d 734, 748 (Mo.banc 1997) (citing *State v. Harrington*, 534 S.W.2d 44, 47 (Mo.banc 1976)). The rules of criminal discovery are not mere etiquette nor is compliance discretionary. *State v. Willis*, 2 S.W.3d 801, 806 (Mo.App.W.D. 1999).

---

was error for a particular reason—as Johnson's objections did—the defendant need not cite in his objection or motion for a new trial the specific rule or statute at issue. *See id.* ("[A]lthough defense counsel did not cite section 494.485 in his objection or motion for a new trial, the objection [that the court could not simply substitute an alternate juror more than five hours into jury deliberation because it was late and would "create an enormous amount of error"] plainly and unequivocally informed the trial court of Mr. Amick's position that the proposed juror substitution was error.").

The determination whether the State violated a rule of discovery is within the sound discretion of the trial court. *State v. Bynum*, 299 S.W.3d 52, 62 (Mo.App.E.D. 2009). Likewise, determining whether a sanction should be imposed for a discovery violation is within the court's discretion. *State v. Neil*, 869 S.W.2d 734, 738 (Mo.banc 1994); *State v. Schallon*, 341 S.W.3d 795, 798 (Mo.App.E.D. 2011). In reviewing criminal discovery claims, we will overturn the trial court only if "fundamental unfairness" to the defendant resulted and the court thus abused its discretion. *State v. Taylor*, 944 S.W.2d 925, 932 (Mo.banc 1997); *Mabry*, 285 S.W.3d at 787.

In the context of a violation of Rule 25.03(A), the question whether fundamental unfairness resulted turns on whether there was a reasonable likelihood that timely disclosure of untimely-disclosed evidence would have affected the result of the trial. *Id.*; *cf. State v. Miller*, 650 S.W.2d 619, 621 (Mo.banc 1983) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)) ("[E]rror can be declared harmless only if we are able to declare a belief that it was harmless beyond a reasonable doubt."). For example, fundamental unfairness may be found where the State's failure to disclose resulted in the defendant's genuine surprise at learning of unexpected evidence and there was at least a reasonable likelihood that the surprise prevented meaningful efforts by the defendant to consider and prepare a strategy for addressing the State's evidence. *Johnston*, 957 S.W.2d at 750.

With these principles in mind, we now turn to the circumstances of this case. On November 26, 2013, Johnson filed a request for discovery pursuant to Rule 25.03 asking for "[a]ny written or recorded statements and the substance of any oral statements made by the defendant[.]" Nevertheless, the State waited until the morning of the first day of trial, Monday, May 11, 2015, to disclose more than 24 hours of recordings of phone calls Johnson made while in jail, of which the State planned to play three clips—two from as far back as October 17, 2013, and one from November 23, 2013—to impeach Johnson. In the clips, Johnson was recorded stating that he was

6

worried that people would not want to be his friend if they learned of his HIV status; that he was only "pretty sure" he had disclosed his HIV status to his sexual partners; and that he was unsure how to tell people about his HIV status.

The State asserts that there is no evidence that it possessed or controlled the recordings at any time before it turned them over, and argues that it thus has not been shown to have violated Rule 25.03. We disagree. Rule 25.03 imposes "an affirmative requirement of diligence and good faith on the state to locate records not only in its own possession or control but also in the control of other governmental personnel," *State v. Clark*, 486 S.W.3d 479, 485 (Mo.App.W.D. 2016) (citing *Merriweather v. State*, 294 S.W.3d 52, 55 (Mo.banc 2009)), and there is nothing in the record indicating that the State diligently and in good faith sought to locate the recordings—in the control of the St. Charles County jail more than a year before trial—in time to comply with Johnson's discovery request.

The State's position is further gutted by the State's admission on the record that it intentionally withheld the recordings from the defense to gain a strategic advantage. The State explained: "If we disclose [the recordings] to the defense they'll tell their client. And I'm not impugning anyone's integrity, I'd do the same thing: Hey, they're listening to your conversations, shut up. So we don't disclose them until towards the end."

In keeping with its stated intent to surprise the defense, the State purported to serve the tapes at defense counsel's office on the Friday before trial while the office was closed for a state holiday. In light of the State's actions and admissions, we conclude that it failed to comply with Johnson's discovery request and violated Rule 25.03; indeed, the State's violation of Rule 25.03 was knowing and intentional and was part of a trial-by-ambush strategy that this Court does not condone and that Rule 25.03 was specifically designed to avoid.

7

We note that the trial court made no explicit determination whether the State violated Rule 25.03 and instead withheld judgment on the issue of the State's untimely disclosures until the fourth day of trial, when the court denied Johnson's objections to the admission of the recordings because by then the defense had "had a chance to review" the recordings. The court thus based its ruling allowing the admission of the excerpted recordings solely on the basis that no fundamental unfairness resulted, and made no determination whether Rule 25.03 had been violoated.

Turning to that analysis, we find that this discovery violation likely resulted in Johnson's genuine surprise at learning on the first day of trial that the State had prepared to use the untimely-disclosed recordings against him, since at no earlier point had Johnson learned that the State—and not just the county jail[3]—had the recordings in its possession, nor had he learned that the State planned to use them at trial. The State argues that Johnson cannot have been surprised by its untimely disclosure of the recordings, because when he made phone calls in jail he knew he was being recorded, but that fact indicates only that Johnson was not surprised the recordings *existed*— *not* that Johnson was unsurprised by *the State's possession* of the recordings or by *the State's plan to introduce* or *the actual introduction* of excerpts of them at trial despite failing to timely disclose the recordings pursuant to Johnson's proper request for discovery.

---

[3] We acknowledge that "the State," if understood as an umbrella term for Missouri government institutions, might properly be said to embrace institutions such as a county jail; however, upon reviewing Missouri case law addressing discovery violations by "the State," we have found that such references in this area of the law are to the prosecutor as a representative of the State of Missouri, and not to any other state official or entity. *See, e.g., State v. Henderson*, 410 S.W.3d 760 (Mo.App.E.D. 2013) (finding that the State had violated Rule 25.03(A)(2) by untimely disclosing the defendant's arrest booking form—which the State claimed it disclosed immediately after receiving it from the police after the first day of trial—not because "the State," defined broadly to include the police department, had been in possession of the form since it was first produced, but because "the State" was obligated to locate and disclose information regarding the form since reasonable inquiry would have revealed it to be in the police department's possession).

8

Yet, the State maintains that in Missouri a defendant's knowledge of the existence of improperly withheld evidence precludes a finding of fundamental unfairness. That is not true. The purposes of Rule 25.03 are not limited to preventing defendants from being surprised by the mere existence of particular untimely-disclosed evidence, but rather extend more broadly to protecting the defense against surprise at learning of the State's possession of such evidence, or of the State's plan to introduce—or the actual introduction of—such evidence at trial, and Missouri courts have found that such surprise has resulted in fundamental unfairness. *See, e.g., State v. Henderson*, 410 S.W.3d 760, 765 (Mo.App.E.D. 2013) (holding that the State's introduction at trial of the defendant's previously-undisclosed statements from his arrest booking form unfairly surprised him, and that the statements were erroneously admitted, because "if the State can be forgiven its duty to disclose a statement of the accused on the basis that the accused must have already known about the statement because he made it, then we will have eviscerated Rule 25.03(A)(2)" (citing *State v. Willis*, 2 S.W.3d at 808).

Indeed, this Court and the Missouri Supreme Court have found discovery violations and unfair surprise necessitating reversal where, prior to the untimely disclosure of particular evidence, the defendant knew of the existence of such evidence—whether of jail phone recordings, other records or statements, or even physical evidence—but reasonably did not expect the evidence to be introduced at trial, since he or she was unaware of the State's possession thereof or plan to introduce it. *See Harrington*, 534 S.W.2d at 46-48 (holding that the trial court's failure to redress the State's introduction at trial of the defendant's untimely-disclosed prejudicial statement was reversible error); *State v. Scott*, 479 S.W.2d 438 (Mo.banc 1972) (same).

Here, too, we find that there was at least a reasonable likelihood that Johnson's genuine surprise at the State's introduction at trial of excerpts of the intentionally withheld and untimely-

disclosed recordings of his jail phone calls prevented him from preparing a meaningful defense in this case.

Johnson was forced to make critical strategic decisions—such as whether to seek to avoid trial by pursuing a plea bargain, whether to waive his right to silence and testify, and what particular defense to raise—without being timely furnished highly prejudicial, properly-requested discovery. *See Henderson*, 410 S.W.3d at 766 ("[F]ailure to produce a statement made by the defendant is uniquely prejudicial compared to failure to disclose a witness or photograph, for example, because of the great weight that the defendant's inculpatory statements carry."). The State had more than a year and a half to prepare its case with the benefit of its chosen excerpts of Johnson's jail phone recordings but failed, in violation of Rule 25.03, to disclose to Johnson before the morning of the first day of trial *any* part of the more than *24 hours* of recordings. Even as an inadvertent mistake, such untimely disclosure would be suspect under Missouri law, but here the State admitted that it purposely withheld the recordings from Johnson so as not to tip off defense counsel that her client was being recorded making incriminating statements.

The importance of these recordings to the State's case was made clear during the trial. The State introduced the statements on cross-examination of Johnson to impeach his testimony that contrary to the victims' claims, he had not failed to disclose to them before engaging in sexual relations with them that he was HIV positive. Thus, the excerpts the State used went to the critical issue in the case: whether Johnson had disclosed to the victims his HIV status. One such statement, in particular—that Johnson was only "pretty sure" that he had disclosed his HIV-positive status to his sexual partners—was the only evidence in the record of *Johnson* stating to anyone that he was not certain about whether he disclosed his HIV status to all his sexual partners. As such, the statement was profoundly prejudicial.

10

The impeachment Johnson suffered as a result of the introduction of this statement demonstrates undeniably that there is at least a reasonable likelihood that the State's discovery violation prevented Johnson from preparing a meaningful defense—i.e., one that was not sabotaged by the State's deliberate untimely disclosure of highly prejudicial evidence—and that timely disclosure of the statement would have affected the result of Johnson's trial. As it happened, Johnson was deprived by the State's discovery violation of a decent opportunity to put his recorded statements into context and thus meet the critical element that loomed against him: whether he disclosed his HIV status to his sexual partners. With enough time to meaningfully review the more than 24 hours of untimely-disclosed jail phone recordings and make strategic decisions in light of them, Johnson—if he still wanted to forgo the State's plea offer, stand trial before a jury, testify, and raise the same defense—might have, once the State opened the door to evidence relevant to putting his recorded statements into context, elected to call as a witness the person to whom he made his most prejudicial statement in the recordings, or might at least have chosen to introduce other relevant and admissible statements that the State did not play at trial. But the State intentionally denied him—and as a result, he never received—a fair opportunity to make such preparations.

The State argues that Johnson waived any objection to its introduction of the three excerpts from the jail phone recordings because he only requested the exclusion of the evidence and did not also ask for a continuance to review the untimely-disclosed recordings. The State cites *State v. Bynum*, 299 S.W.3d 52, 62 (Mo.App.E.D. 2009), for the assertion that "[a] defendant's failure to ask for a continuance can be properly considered by the appellate court in determining whether the trial court abused its discretion." But in the cases most similar to this one, Missouri appellate courts have declined to hold it against the defendant that he failed to ask for a continuance. *See,*

11

*e.g., Willis*, 2 S.W.3d at 807 (finding that the defendant's failure to request a continuance "ha[d] no bearing on whether the State's discovery violation resulted in fundamental unfairness" where, as here, "[a] continuance of a few hours could not remedy the problem created by the State's failure to abide by the discovery rules," and the State's discovery violation was to be "examined with grave suspicion" because the State failed to timely disclose the defendant's inculpatory statement(s), which categorically carry great weight with the jury and demand disclosure); *Henderson*, 410 S.W.3d at 766 (rejecting the State's argument—that the defendant's failure to ask for a continuance "discredits his claim of prejudice"—because the State failed to timely disclose an inculpatory statement, which by its nature is "uniquely prejudicial").

Because here the State went a step beyond *Willis* and *Henderson* and *intentionally* failed to timely disclose inculpatory statements by Johnson that exposed him to unique prejudice, we find that Johnson's failure to ask for a continuance has no bearing on whether the State's violation and introduction of the recording excerpts resulted in fundamental unfairness.

We are also unpersuaded by the State's argument, based on *State v. Carlisle*, 995 S.W.2d 518, 520 (Mo.App.E.D. 1999), and *State v. Merrick*, 677 S.W.2d 339 (Mo.App.E.D. 1984), that Johnson had enough time during the first three days of trial to prepare a meaningful defense in light of the 24 hours of untimely-disclosed recordings. The State's assertion in this regard actually further demonstrates the prejudice and unfairness of what occurred in this case. The solution to the State's blatant discovery violation should not be to put the defense at an additional disadvantage by forcing the defense to spend its time during trial analyzing improperly-withheld discovery instead of preparing for the next witness, next day of trial, or the other work-intensive matters a trial lawyer must deal with.

12

We hold, therefore, that the State's blatant discovery violation here is inexcusable, should not be repeated, *cf. State ex rel. Joyce v. Mullen*, ED104226 (Mo.App.E.D. Nov. 15, 2016) (ordering that a "Circuit Attorney's practice of routinely withholding [requested] information . . . in direct contravention of the mandates of [Rule 25.03] . . . . should stop immediately"), and supports a finding of fundamental unfairness in this case. We note that in addressing a similar sort of violation of Rule 25.03—the late endorsement of a witness—the Missouri Supreme Court has held on numerous occasions, *see, e.g., State v. Storey*, 40 S.W.3d 898, 906 (Mo.banc 2001), *State v. Johns*, 34 S.W.3d 93, 114 (Mo.banc 2000), *State v. Chaney*, 967 S.W.2d 47, 57 (Mo.banc 1998), that in determining whether the trial court abused its discretion by permitting testimony in violation of Rule 25.03 that resulted in fundamental unfairness to the defendant, Missouri appellate courts consider multiple factors, including whether the State intended surprise or acted deceptively or in bad faith, with the intention to disadvantage the defendant. Here, the State admitted that by failing to timely disclose Johnson's jail phone recordings, it intended to keep defense counsel from learning of them and preparing for their introduction at trial. The State's bad-faith strategy was successful, and its withholding of the recordings clearly was intended to disadvantage Johnson.

Accordingly, we find that the trial court abused its discretion by admitting the excerpted recordings of the phone calls Johnson made while in jail. Johnson's first point is granted, and we reverse and remand for a new trial. In light of this holding, we do not consider Johnson's second point on appeal, which relates solely to the constitutionality of Johnson's punishment for an offense for which he must now be retried.

13

## Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand for a new trial.

 

                                  _____

                                  James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J., and
Lisa P. Page, J., concur.