**STATE of Missouri, Respondent,**

v.

**Perry I. PITCHFORD, Jr., Appellant.**

**ED 104283**

Missouri Court of Appeals,
Eastern District,
**DIVISION FOUR.**

FILED: March 28, 2017

Lisa M. Stroup, 1010 Market Street, Suite 1100, St. Louis, MO 63101, for appellant.

Joshua D. Hawley, Karen L. Kramer, PO Box 899, Jefferson City, MO 65102, for respondent.

Gary M. Gaertner, Jr., Judge

## Introduction

Perry I. Pitchford, Jr. (Pitchford) appeals from the trial court's judgment and sentence following a jury's verdict of guilty. He asserts the trial court plainly erred in admitting excerpts of recorded phone calls Pitchford made in jail that were not disclosed to the defense until the morning of trial, in giving each juror a copy of a specific instruction, in admitting evidence of uncharged and prior bad acts, and in allowing the State to suggest special knowledge of facts during voir dire. We affirm.

## Background and Procedure

The State charged Pitchford as a prior and persistent offender with one count of the class A felony of robbery in the first degree, in violation of Section 569.020, RSMo. (2000), and one related count of armed criminal action (ACA). At trial, the following occurred.

Just before the start of trial on Monday, February 22, 2016, counsel for Pitchford announced the State had just provided him with four disks containing hundreds of hours of recorded telephone calls Pitchford had made from the St. Louis City Justice Center (Justice Center), and the State had informed him of its intention to introduce several redacted excerpts of conversations. Counsel objected to this evidence, complaining of surprise. The State responded that it had informed counsel in August of 2015 that all of Pitchford's telephone calls

from the Justice Center were being recorded and were available to be subpoenaed. Moreover, the State had not intended to subpoena the telephone calls until the Thursday before trial when the complaining witnesses brought potential witness tampering to the State's attention. Only at that point did the State subpoena the records, receiving them on Friday afternoon. The State listened to the recordings all weekend and around 11:00 p.m. on the evening before trial discovered the incriminating statements it was now seeking to admit. Pitchford again objected to the evidence as prejudicial "without further opportunity to conduct discovery and have a chance to sit down and listen to all these tapes and understand the context and the source and the whole totality." The trial court overruled Pitchford's objection to the specific statements the State was seeking to introduce, but it reserved ruling on any additional recordings. The court also overruled Pitchford's implied request for continuance.

Trial commenced, and Jessica Harmony (Victim) testified to the following. She and a female friend, K.D., were celebrating K.D.'s birthday at Nara, a bar on Washington Avenue in St. Louis, Missouri. Pitchford and a male friend joined their table and spent the evening with them. At one point, Pitchford and K.D. went outside to smoke marijuana, and Victim obtained Pitchford's telephone number so she could contact K.D. outside. When the bar closed, Pitchford offered to drive the women to Victim's car. Victim and K.D. entered Pitchford's car, where they found Pitchford, his friend from the bar, and a third man they did not know. Pitchford parked his car behind Victim's car, and they all sat for a while smoking marijuana. Pitchford then drove away from Victim's car at a high rate of speed with the women still in the backseat. When Pitchford pulled over, the front passenger pulled out a handgun

and pointed it at Victim and K.D. while Pitchford demanded Victim's purse. Victim refused, and Pitchford grabbed the purse off Victim's wrist, unzipped it, and removed her money, $600 in cash. Victim and K.D. exited the car and ran away while Pitchford drove off. Victim reported the robbery to the police, who were able to locate Pitchford through the telephone number he had given Victim earlier in the evening. Victim identified Pitchford in both a photograph and a physical line up.

Pitchford testified in his own defense to the following. The front passenger, a man named Christopher Bronson, a.k.a. C4 (C4), was the person who drew a handgun, demanded money from Victim, and took Victim's purse off her wrist. After the women ran away, C4 pointed the gun at Pitchford and demanded that he drive. A couple blocks away, C4 exited the car and then shot Pitchford's vehicle as he drove away, leaving two bullet holes in the fender. Pitchford was not aware before C4 brandished the weapon that C4 was armed, and he did not plan the robbery with C4. In the State's rebuttal evidence, the owner of Nara testified that Pitchford had originally entered the bar with three friends, but one was turned away because he was armed with a gun.

On cross-examination, Pitchford denied asking his wife to contact Victim while he was incarcerated. Although he agreed he and his wife had talked about trying to pay off Victim and K.D., he stated it was just talk and they did not intend to actually contact the women and he did not give his wife Victim's number. The State on rebuttal introduced Exhibit 20, which purported to be a recording of a telephone call Pitchford made from the Justice Center. Pitchford's counsel did not object to its admission. The State then introduced Exhibit 20A, which purported to be a redacted copy of the relevant portions of the longer

conversation to play for the jury. Pitchford's counsel objected to Exhibit 20A, arguing that the redacted copy took statements in the conversation out of context. He requested instead that the State play the entire conversation in Exhibit 20 for the jury, which the trial court ordered.[1]

The jury found Pitchford guilty on both counts. The trial court sentenced Pitchford in an amended judgment to concurrent sentences of thirty years in the Missouri Department of Corrections for the robbery count and fifty years for the ACA count. This appeal follows.

## Discussion

Pitchford raises four points on appeal, claiming errors in the admission of evidence, jury instruction, and improper statements by the prosecution. He concedes that because he did not file a motion for new trial, none of the points on appeal are preserved for appellate review. He thus requests plain-error review under Rule 30.20. Under plain-error review, we will reverse only if a plain error affecting substantial rights results in manifest injustice or a miscarriage of justice. State v. McCleary, 423 S.W.3d 888, 896 (Mo. App. E.D. 2014). We review for plain error using a two-step analysis. First, we determine whether the record facially establishes substantial grounds to believe plain error occurred, which is error that is evident, obvious, and clear, resulting in manifest injustice or a miscarriage of justice. If so, we may then consider whether the error actually resulted in manifest injustice or a miscarriage of justice. Id. Plain-error review requires that the alleged error have a decisive effect on the verdict. Id.

## Point I

In his first point on appeal, Pitchford argues the trial court plainly erred in denying his request to exclude the recordings of telephone calls he made from the Justice Center because the late disclosure on the morning of trial resulted in manifest injustice and a miscarriage of justice by preventing meaningful efforts to prepare a strategy to address that evidence, which included an incriminating statement. We disagree.

Our review of an alleged discovery violation consists of two questions: first, whether the State's failure to disclose evidence violated Rule 25.03, and second, if the State violated Rule 25.03, what is the appropriate sanction the trial court should have imposed. State v. Henderson, 410 S.W.3d 760, 764 (Mo. App. E.D. 2013) (citing State v. Zetina-Torres, 400 S.W.3d 343, 353 (Mo. App. W.D. 2013)). Here, because the issue is not preserved and we review only for plain error, not only must Pitchford show the State failed to comply with discovery rules, but also that this failure resulted in manifest injustice or a miscarriage of justice. See State v. Tripp, 168 S.W.3d 667, 674 (Mo. App. W.D. 2005). He can meet neither burden.

Rule 25.03 provides that "the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request: ... (2) Any written or recorded statements and the substance of any oral statements made by the defendant or by a co-defendant." Rule 25.03(A)(2). "The duty to disclose includes not only information known to the prosecutor, but also informa-

---

1. On appeal, Pitchford has not submitted Exhibit 20 as part of the record, and the State has submitted only Exhibit 20A on appeal, which was not admitted and not played for the jury.

tion that she may learn through reasonable inquiry." Henderson, 410 S.W.3d at 764. The purpose of Rule 25.03 is to prevent surprise and to give the defendant the opportunity to prepare his case in advance of trial. Zetina-Torres, 400 S.W.3d at 353-54. Rule 25.03's protection extends to preventing surprise from learning not only of the existence of unknown evidence, but also to the State's possession of and plans to use evidence known to the defendant. See Henderson, 410 S.W.3d at 765 (finding unfair surprise from State's failure to disclose defendant's booking statement, noting that "if the State can be forgiven its duty to disclose a statement of the accused on the basis that the accused must have already known about the statement because he made it, then we will have eviscerated Rule 25.03(A)(2)").

This Court recently addressed the State's discovery duty with regards to producing jail telephone recordings in State v. Johnson, finding that the State's failure to disclose its plans to introduce the recordings until the day of trial resulted in fundamental unfairness. State v. Johnson, 513 S.W.3d 360, 2016 WL 7388617 (Mo. App. E.D. Dec. 20, 2016). There are, however, several key differences between Johnson and the case here. In Johnson, the defense had served the State with a discovery request pursuant to Rule 25.03, but the State intentionally withheld its possession of and intent to use recorded inmate conversations until the morning of trial with the express purpose of surprising the defense. Id. at 363–34, 365–66, 2016 WL 7388617, at *2, 4. Neither of these circumstances exists here.

■ First, Pitchford here concedes he did not make a written request for discovery under Rule 25.03, but he still argues

the State violated Rule 25.03(A)(2) by not producing the recorded telephone calls until the morning of trial. The essence of Pitchford's argument is that, although he did not file a request for discovery under Rule 25.03, the State created a duty for itself to provide complete discovery by volunteering some discovery prior to trial.[2] Case law does not support Pitchford's argument. Rather, "[u]nless and until defendant makes a request for discoverable information or material, the State cannot be in violation of Rule 25.03 for failing to produce it." State v. Bescher, 247 S.W.3d 135, 140 (Mo. App. S.D. 2008) (citation omitted).

Second, unlike in Johnson, the record does not show that the State intentionally withheld the recorded telephone conversations here. Rather, the State testified that it had not planned to subpoena Pitchford's recorded inmate conversations until the complaining witness brought possible victim tampering to the State's attention the Thursday before Monday's scheduled trial. The State immediately subpoenaed the telephone recordings, receiving them on Friday. The State listened to the recordings all weekend and did not discover the statements it sought to introduce until 11:00 p.m. on the evening before trial. The trial court believed that the State's delay was not intentional and we defer to the court's credibility determinations, recognizing that "because the local trial judge interacts with the local prosecutors [and] local defense attorneys ... on a regular basis ... the trial judge is in a much better position to determine the credibility of those individuals than we are." State v. Brown, 382 S.W.3d 147, 182 (Mo. App. W.D. 2012). The State produced the recordings as soon as it had them in its

---

2. The State sent the defense two letters before trial indicating that it had made discovery

available to be picked up.

possession and planned to use them. We decline to impose a bright-line rule upon the trial court that it must continue the trial upon the late discovery by the State of relevant evidence within a certain number of days before the start of trial, where, as here, there was no evidence of the State attempting to intentionally surprise the defendant.

Not only has Pitchford failed to meet his burden to show a discovery violation, but he also cannot show manifest injustice or a miscarriage of justice from the late disclosure of the State's intention to produce his recorded telephone calls from the Justice Center. See Tripp, 168 S.W.3d at 674. Pitchford asserts that the last minute disclosure prevented him from preparing a meaningful strategy to address the recordings, and that had he known in advance of trial that the State would impeach him with the recordings he would not have testified. The record does not support his assertion.

We note that although Pitchford asserts error from the late disclosure of hundreds of hours of recordings, the trial court only admitted one 20-minute telephone call. The State did not seek to admit the recording during its case in chief, but admitted it as part of its rebuttal on the third day of trial. Counsel for the defense stated he had no objection to admitting the full 20-minute recording (Exhibit 20) but objected to the offered five-minute redaction (Exhibit 20A) as it might take Pitchford's statements out of context. Counsel's comments demonstrate that the defense had had the chance to review the 20-minute recording and found nothing objectionable in it. To the extent Pitchford complains that he did not have the opportunity to review hundreds of hours of recordings for potentially incriminating statements for which he

could prepare a defense, his complaint has no bearing on what occurred at trial.

We see no showing here of a discovery violation even if Pitchford had filed a Rule 25.03 discovery request or had preserved the objection, and thus there was no error, plain or otherwise, resulting in manifest injustice or a miscarriage of justice. Thus, we find the trial court did not err in admitting Exhibit 20. Point denied.

## Point II

In his second point, Pitchford argues the trial court plainly erred in giving each juror a copy of Instruction No. 5 without first getting his consent because it violated his right to an impartial jury by singling out certain instructions in contradiction of Instruction No. 3. We disagree.

Pitchford has the burden to prove on appeal that the alleged instructional error resulted in manifest injustice or a miscarriage of justice, which occurs when the trial court "has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." State v. Barnaby, 91 S.W.3d 221, 225 (Mo. App. W.D. 2002).

Here, Instruction No. 3, given in every criminal case, specifically instructed the jury that "[y]ou must not single out certain instructions and disregard others or question the wisdom of any rule of law." The trial court provided a single copy of the full packet of instructions to the jury, but during deliberations, the jury requested individual copies of Instructions No. 5 and 8. The trial court granted both requests. Pitchford now asserts a manifest injustice resulted from the jury having individual copies of Instruction No. 5,[3] although he

---

3. Instruction No. 5 stated in full: "A person is responsible for his own conduct and he is

responsible for the conduct of another person in committing an offense if he acts with the

asserts no error relating to Instruction No. 8. Pitchford has failed to cite to any authority supporting his allegation that the trial court erred in giving extra copies of an individual instruction to the jurors. We see no error. That the jury received individual copies of an instruction without more does not suggest to this Court that jurors gave one instruction more weight than another, in contradiction of Instruction No. 3. Rather, we presume that the jury followed the instructions, and Pitchford has not rebutted this presumption. State v. Burnett, 481 S.W.3d 91, 96 (Mo. App. E.D. 2016).[4]

Because the record does not facially establish substantial grounds to believe plain error occurred resulting in manifest injustice or a miscarriage of justice, we decline to exercise our discretion to review the claim of plain error under Rule 30.20. Point denied.

## Point III

■ In his third point on appeal, Pitchford argues the trial court plainly erred in admitting evidence that he had violated the terms of his parole by smoking marijuana, going to a bar, and being in the company of someone with a gun, because such evidence violated his right to be tried only for the charged offenses and suggested a propensity to break the law. We disagree.

Again, Pitchford concedes that because he did not object to the admission of this evidence at trial, he is only entitled to plain-error review and must demonstrate manifest injustice or a miscarriage of justice. Rule 30.20.

■ The general rule for the admission of evidence is that evidence of uncharged misconduct and prior convictions is inadmissible to show a defendant's propensity to commit such crimes, for fear that the jury would convict the defendant based on the propensity rather than on the evidence presented to support the particular crime charged. State v. Adams, 443 S.W.3d 50, 55 (Mo. App. E.D. 2014); McCleary, 423 S.W.3d at 896-97. There are, however, several established exceptions to this general rule, including where the evidence tends to present a complete and coherent picture of the crime. State v. Primm, 347 S.W.3d 66, 70 (Mo. banc 2011). Evidence of uncharged misconduct must be both logically relevant, in that it must tend to establish directly guilt for the crime charged, and legally relevant, in that its probative value must outweigh its prejudicial effect. Adams, 443 S.W.3d at 55. The trial court has discretion to admit evidence of uncharged misconduct because the court is in the best position to determine whether the relevance of such evidence is outweighed by the prejudice. See State v. Campbell, 147 S.W.3d 195, 206 (Mo. App. S.D. 2004); see also State v. Helm, 892 S.W.2d 743, 744 (Mo. App. E.D. 1994).

The State elicited testimony in its case in chief that Pitchford met Victim at a bar, he smoked marijuana, and his companion

---

other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it."

4.  As a practical note, it is better for a trial court to provide a complete packet of instructions versus selected instructions to each juror. If a trial court decides to give individual copies of the entire instruction packet to each juror, it is best practice to instruct the jury that the foreperson is in possession of the court's official instructions and if there are any variances between the official instructions and the copies provided to the other jurors, the jury must follow the official instructions in the foreperson's possession. Trial courts should also provide only one copy of the verdict form.

had a gun. Pitchford asserts that because the jury knew he was on parole, the State's evidence implicitly established he violated the terms of his parole and thus improperly suggested he had a propensity to break the law. However, Pitchford may not assert error from the admission of his own testimony and evidence. Here, the record shows the State did not inquire specifically into Pitchford's parole status, but rather he volunteered that he was on parole. When Pitchford testified in his own defense, he admitted to three prior drug possession cases and a conviction for unlawful use of a weapon when he was seventeen years old. On cross-examination, the State elicited that Pitchford also had a 2011 conviction for distribution of a controlled substance for which he received a thirteen-year sentence. This evidence was admissible. See McCleary, 423 S.W.3d at 896 (State may adduce evidence of witness' prior convictions to impeach witness' credibility, but this evidence is limited to nature, date and place of each prior crime and resulting sentence). As the State was asking about the sentences for each conviction, the following exchange occurred:

> Pitchford: Yes, I got five cases, you keep saying the same thing. I got five cases, that's all I know, and I'm on parole, yes.
>
> State: Okay.
>
> Pitchford: I'm on parole, I had a job, I'm trying to change my life. I married, got kids, I was doing good, two jobs.
>
> State: So why did you go to the bar that night?
>
> Pitchford: To have fun. Actually, I just got out of prison two months ago and I was celebrating.

"A defendant may not 'complain about matters he himself brings into the case.'" State v. Baumruk, 280 S.W.3d 600, 612 (Mo. banc 2009) (citation omitted). Plain error review is discretionary, and

"an appellate court should not use it to impose a *sua sponte* duty upon a trial court to correct mistakes of a defendant's own making." See State v. Shockley, 410 S.W.3d 179, 201 (Mo. banc 2013).

In this context, we turn to the specific evidence Pitchford challenges here. First, the evidence that Pitchford violated the terms of his parole by being in a bar was necessary to present a coherent picture of the crime, in that the location where he met the victims was part of the basic facts of what occurred that evening, and thus this evidence falls into an established exception to the general ban on uncharged misconduct. See Primm, 347 S.W.3d at 70. Moreover, the State did not ask Pitchford if he went to the bar while he was on parole until after Pitchford himself introduced the fact that he was on parole. The State then asked, "You were on probation when you went to the bar, right?" Pitchford responded, "Yeah, I got a violation for that." Again, the record shows it was Pitchford, not the State, who introduced his parole violation, and he may not assert error from his own evidence. See Baumruk, 280 S.W.3d at 612. Second, even if the evidence that Pitchford was smoking marijuana was not logically relevant in that it did not tend to establish his guilt for the charged crime, this error was insufficient to warrant reversal because it was part of the complete and coherent picture of the events that transpired. See Primm, 347 S.W.3d at 70.

Third, the bar owner's testimony that Pitchford witnessed his companion be turned away from the bar because he was armed with a gun—which constituted a violation of the terms of Pitchford's parole—was admissible to rebut Pitchford's testimony that he was unaware C4 had a gun. Whether Pitchford was aware C4 was armed was logically and legally relevant in that it tended to prove his participation in

the robbery and it was more probative than prejudicial. Relevant evidence, even of uncharged misconduct, is admissible. State v. Williams, 502 S.W.3d 90, 98 (Mo. App. E.D. 2016) (evidence of uncharged misconduct may be admissible if it is otherwise logically and legally relevant). Further, if a defendant raises an issue, the State can present otherwise inadmissible testimony to counter the evidence the defendant has injected into the case. See State v. Floyd, 347 S.W.3d 115, 122 (Mo. App. E.D. 2011). Pitchford raised the issue of whether he knew C4 was armed, and the State then presented evidence rebutting Pitchford's testimony.[5]

The trial court did not err, plainly or otherwise, in admitting evidence that Pitchford was on parole, was at a bar, smoked marijuana, and was in the company of someone with a gun. Point denied.

### Point IV

■ In his fourth point on appeal, Pitchford argues the trial court plainly erred in allowing the State to make a statement during voir dire suggesting the State had special knowledge of facts showing Pitchford was guilty. We disagree.

■ Counsel for defense and the State are tasked with determining during voir dire if any prospective juror has any disqualifying factors. State v. Herndon, 670 S.W.2d 32, 37 (Mo. App. W.D. 1984). If a potential juror discloses they would not follow the instructions of the court regarding the State's burden of proof, the State has a duty to inquire further, and we consider questions that are designed to further this inquiry in this overall context. Id. at 36-37 (finding no error for State to discuss reasonable doubt when prospective

juror stated he would require proof beyond all doubt, because comments by State were "harmless in the context of the case") (citation omitted).

Here, the State was conducting an inquiry into whether the venire panel would follow the trial court's instructions on the burden of proof, which was that State has the burden to prove guilt beyond a reasonable doubt but not beyond all doubt. As relevant here, two venirepersons stated they would be unwilling to convict a defendant on witness testimony alone, but would require physical evidence, such as a video of the crime. The State responded, "Well, sure, sure. Obviously you're going to get evidence here. We would not be in trial if you weren't going to get evidence. And ethically I cannot go forward on a case where I don't believe that there is enough evidence."

■ Pitchford argues the State's comment—namely, that it would not go forward on a case where it did not believe there was enough evidence—constituted an improper statement by the prosecution suggesting it had special knowledge of facts not before the jury establishing Pitchford's guilt. This argument is unavailing. While it is true the State may not make arguments that induce the jury to believe it has special knowledge of facts not before the jury showing a defendant's guilt, the State may comment on the evidence. State v. Link, 965 S.W.2d 906, 912 (Mo. App. S.D. 1998). The propriety of a comment turns on whether the prosecutor's statement of belief appears to be based on the evidence. Id. Here, the full context of the record shows the State was not implying it had special knowledge of facts not before the jury, but was merely saying that the State believed it could

**5.** Moreover, it would not have been error for the State to have adduced this evidence in its case in chief instead of just as rebuttal evidence, because it was relevant to show Pitchford's participation in the robbery.

prove its case beyond a reasonable doubt and planned to produce evidence accordingly. We will only reverse a conviction for improper argument by the State if the defendant establishes the challenged comment had a decisive effect on the jury. State v. Jackson, 768 S.W.2d 614, 616-17 (Mo. App. E.D. 1989). There is no evidence of such a decisive effect here.

This argument does not establish substantial grounds for believing manifest injustice or a miscarriage of justice has resulted, and we decline to review for plain error. Point denied.

### Conclusion

The judgment and sentence of the trial court is affirmed.

James M. Dowd, P.J., concurs.

Kurt S. Odenwald, J., concurs.