

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED110690 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | Case No. 2011-CR04849-01 |
| | ) | |
| GARRY DENSON, | ) | Honorable Rebeca Navarro-McKelvey |
| | ) | |
| Appellant. | ) | Filed: June 20, 2023 |

## Introduction

Garry Denson (Denson) appeals from the trial court's judgment and sentence after

a jury found him guilty of one misdemeanor[1] charge of trespass and three misdemeanor

---

[1] Missouri Rule 27.050 (2022) provides that the Missouri Attorney General's Office "shall appear on behalf of the state in the court of appeals and in the supreme court and have the management of and represent the state in all appeals to which the state is a party other than misdemeanors." While not required to do so, the Missouri Attorney General may also choose to handle misdemeanor appeals. See State v. Rall, 557 S.W.3d 498, 500 (Mo. App. W.D. 2018). In the appeal from the misdemeanor convictions in this case—and in several other recent cases—neither the Missouri Attorney General's Office nor the local prosecutor's office initially appeared on behalf of the State until specifically requested by this Court.

This Court has observed that, as is the situation here, misdemeanor appeals sometimes fall through the cracks, especially in cases where the State has brought a felony charge but the jury returns only a misdemeanor conviction. Because the issues raised in appeals from misdemeanor convictions can also have profound legal implications for felony cases, it is imperative that the State's interests be represented in misdemeanor appeals. In the absence of a mandate assigning misdemeanor appeals to the Attorney General's Office, local prosecutors have the primary responsibility to file Respondent briefs on behalf of the State in appeals from misdemeanor convictions. Local prosecutors must be more cognizant of this responsibility, and if the local prosecutor cannot file a timely and appropriate brief, he or she should request guidance or assistance from the Attorney General's Office.

charges of violating an order of protection.  He challenges the trial court's admission into evidence of eight photographs.  We affirm.

Background

The State charged Denson with one count of the class E felony of unlawful use of a weapon (Count I), one count of the class A misdemeanor of domestic assault in the fourth degree (Count II), one count of the class E felony of domestic assault in the third degree (Count III), one count of the class B felony of burglary in the first degree (Count IV), and three counts of the class A misdemeanor of violation of an order of protection (Counts V, VI, and VII), stemming from incidents that occurred between December 29, 2020 and March 2, 2021 involving Denson and his former wife, C.W.[2]

On February 2, 2022, Denson filed a supplemental discovery request that the State disclose, as relevant to this appeal, any pictures taken by the police on January 27, 2021.  Trial was scheduled for April 12, 2022.  On April 9, 2022, Denson moved to exclude certain photographs from evidence as a sanction for the State's alleged violation of discovery rules.  He asserted that although he requested all the photographs in February, the State did not disclose all of them until April 8, 2022, four days before trial was scheduled to begin.

At a hearing on the motion, the State explained that it had requested the entire police file from the police department, and the police department had uploaded it onto evidence.com, which is their practice.  The file included several photographs, leading the State to believe it had the entire file.  However, while interviewing a trial witness on April 8, 2022, the State discovered the police department had not uploaded the photographs the investigating officers took on January 27, 2021.  The police department uploaded these

_____

[2] At trial, C.W. explained that while she went by C.D. at the time of the incidents, she and Denson had since divorced and she had reverted to her maiden name, C.W.  We refer to C.W. by her current legal name.

photographs to evidence.com on April 8, 2022 and the State then forwarded them to Denson's defense counsel that day. The State argued the photographs were cumulative to the written description in the police report and thus could not have caused surprise to Denson. The trial court denied Denson's motion and admitted the photographs into evidence at trial over Denson's renewed objection.

At trial, C.W. testified to the following. At the time of the incidents, she and Denson were married. On December 29, 2020, Denson threatened her with a handgun, and he grabbed her by the neck and threw her to the ground. That same day, she reported the assault to the police and filed a petition for an ex parte order of protection against Denson, which the court granted and scheduled for a full hearing on February 4, 2021. The ex parte order of protection prohibited Denson from coming into their shared home at 131 Woodlawn Avenue and from contacting C.W. On January 27, 2021, C.W. returned from work to find Denson in the house. He grabbed her around the neck, but he left when she called the police. As well, Denson contacted C.W. on February 3, 2021 multiple times via text. After a February 4, 2021 hearing, the trial court granted C.W. a full order of protection against Denson, valid for one year. Denson again contacted C.W. multiple times between February 27 and March 2, 2021 by text.

St. Charles Police Department Detective Stephen Dyer (Detective Dyer) testified that on January 27, 2021, he responded to 131 Woodlawn Avenue for a domestic disturbance. He noticed C.W. had bruises on her face and a bloody lip. As he walked through the house, he noticed drawers pulled open with clothes thrown everywhere, and he observed that a basement window had been broken from the outside with glass on the floor.

3

Denson testified in his own defense that on December 29, 2020, C.W. was the initial aggressor, hitting him and threatening to shoot him in the genitals. He denied assaulting her or threatening to harm her with a gun. After he was arrested, he was served with the ex parte order of protection while in jail, which he understood prohibited him from going to the family residence and contacting C.W. He agreed, however, he knowingly entered 131 Woodlawn Avenue on January 27, 2021 in violation of the order of protection because he needed to retrieve $1,665 in cash and jewelry he had left there that C.W. had not returned. His key no longer worked, so he broke a window in the basement and climbed in. He searched the house for his money and jewelry but could not find them. He asserted that when C.W. entered the home, he hugged her but then tripped and grabbed her arm to regain his balance, but he testified he did not grab her by the neck. He agreed he texted C.W. on February 3, 2021, before the order-of-protection hearing, and also several times between February 27 and March 2, 2021 after he was discharged from the hospital.

The jury acquitted Denson on the charges of unlawful use of a weapon, misdemeanor domestic assault, felony domestic assault, and felony burglary; but the jury found him guilty of trespass in the first degree—a lesser included charge for Count IV of felony burglary—and all three counts of violating an order of protection. In accordance with the jury's recommendation, the trial court sentenced Denson to a term of six months in the county jail on Counts IV and V, and a term of three months in the county jail on Counts VI and VII, to be served concurrently to each other. The trial court granted Denson credit for time served. This appeal follows.

Discussion

4

Denson raises eight points on appeal, each challenging the trial court's admission into evidence of a different photograph on the grounds that the State did not disclose the photographs to the defense until four days before trial. In Point I, Denson challenges Exhibit 5, a photograph depicting a chair with broken blinds on it; Point II, Exhibit 6, a photograph depicting a window with no blinds; Point III, Exhibit 7, a photograph depicting blinds in a chair, pillows on the floor, and broken glass behind the chair; Point IV, Exhibit 8, a photograph depicting glass that had fallen from the window onto the chair; Point V, Exhibit 9, a photograph depicting injuries to C.W.'s face; Point VI, Exhibit 10, a photograph depicting drawers in the dressers pulled out and items taken out of C.W.'s purse; Point VII, Exhibit 11, a photograph depicting C.W.'s dresser with items taken out of it; and Point VIII, Exhibit 12, a photograph depicting a dresser that had belonged to Denson that had been emptied out. We find no error in the trial court's admission of these eight photographs.

We consider two questions when reviewing an alleged discovery violation. State v. Henderson, 410 S.W.3d 760, 764 (Mo. App. E.D. 2013). We determine, first, whether the State's failure to disclose the evidence violated Rule 25.03[3]; and, second, if there was a violation, whether the trial court imposed the appropriate sanction pursuant to Rule 25.18. Id. It is in the trial court's sound discretion to determine whether the State has violated Rule 25.03. State v. Johnson, 513 S.W.3d 360, 364 (Mo. App. E.D. 2016). Likewise, Rule 25.18 affords the trial court significant discretion to remedy the violation "as it deems just under the circumstances," and we will reverse only upon a strong showing that the trial court abused its discretion, resulting in prejudice. State v. Zuroweste, 570 S.W.3d 51, 60

---

[3] All rule references are to Mo. R. Crim. P. 2021, unless otherwise stated.

(Mo. banc 2019); see also Rule 25.18. When the trial court has declined to impose any sanction, we must determine whether the trial court's ruling resulted in fundamental unfairness to the defense. Id. Fundamental unfairness occurs when the State's failure to disclose evidence resulted in "genuine surprise" and there is a reasonable likelihood that the timely disclosure of evidence would have affected the result of the trial. See Zuroweste, 570 S.W.3d at 60; Johnson, 513 S.W.3d at 365.

"Rule 25.03 provides that the State shall, upon written request by defendant's counsel, disclose to the defense certain classes of materials and information within the State's possession or control that are designated in such request." Id. at 364; see also Rule 25.03(b). If the material or information is in the possession or control of other governmental personnel, the State "shall use diligence and make good faith efforts to make the material or information available to defendant." Rule 25.03(h). The purpose of the rules of criminal discovery is to prevent surprise "by allowing both sides to know the witnesses and evidence to be introduced at trial." Zuroweste, 570 S.W.3d at 56 (citation omitted); see also Johnson, 513 S.W.3d at 364.

Here, on February 2, 2022, Denson specifically requested the State produce any pictures taken by police on January 27, 2021. The State did not disclose the requested photographs until April 8, 2022, four days before trial. The State explained that it had requested the entire file from the St. Charles Police Department, and what the State received included photographs, leading the State to believe it had the entire file. Not until April 8, 2022 did the State realize pictures were missing from the police file, and the State obtained the rest of the photographs and disclosed them to the defense that same day. The

trial court admitted these photographs into evidence four days later at the April 12 trial, over Denson's objections.

The State had an affirmative duty to exercise diligence and good faith to obtain the requested photographs from the St. Charles Police Department. See Zuroweste, 570 S.W.3d at 57-58. It appears from the record that, although the State requested the "entire file" from the police, the State did not look at the file to determine whether the record included the photographs referenced in the police report and specifically requested by the defense. We need not determine whether the State's actions violated Rule 25.03(h)'s requirement of diligence and good faith because, even if they did, the State's disclosure of the photographs four days before trial provided Denson with sufficient opportunity to avoid surprise and prepare for trial. The untimely disclosure of discovery material does not necessarily require exclusion of that material, as long as the defendant had an appropriate opportunity to avoid surprise and prepare in advance for trial. State v. Torres, 626 S.W.3d 316, 323 (Mo. App. W.D. 2021). "Disclosure of evidence shortly before trial does not result in fundamental unfairness as long as the defense is given adequate opportunity to review such evidence before trial." Id. (citation omitted). Here, Denson was aware of the police report, which included descriptions of the photographs taken at the scene. Four days would be sufficient time to compare the eight photographs at issue on appeal to the descriptions of these photographs previously provided. See id. (trial court may permit admission of late disclosed evidence if defendant was already aware of information or otherwise not surprised by it). Without a showing of actual surprise at trial, Denson cannot show here that fundamental unfairness resulted from the late disclosure, and thus he cannot

7

show the trial court abused its discretion in denying sanctions and admitting the photographs. See Zuroweste, 570 S.W.3d at 60; Johnson, 513 S.W.3d at 365.

Moreover, under the circumstances here, Denson has failed to show there was a reasonable likelihood that a timely disclosure of this photographic evidence would have affected the outcome of his trial. See Zuroweste, 570 S.W.3d at 60. Rather, many of the admitted photographs were cumulative to Denson's own admissions and to the testimony of other witnesses. Exhibits 5 through 8 depicted evidence of the broken window in the basement of 131 Woodlawn Avenue, through which the State alleged Denson gained entry to the house, and Exhibits 10 through 12 depicted evidence that the house had been searched. At trial, both C.W. and Detective Dyer testified that a basement window had been broken in from the outside, and that drawers in the house had been emptied onto the floor. Moreover, Denson testified at trial that when his key did not open the door to 131 Woodlawn Avenue on January 27, 2021, he knowingly entered the house by breaking a window in the basement and climbing in to search for cash and jewelry he had left there, in violation of the order of protection.

In light of all the evidence submitted at trial, including Denson's own admissions, there is no reasonable likelihood that the earlier disclosure of the photographs depicting the broken window and searched drawers would have affected the outcome of the trial. See Zuroweste, 570 S.W.3d at 60. While Denson speculates that without the photographic evidence, there is a reasonable probability that he would not have testified at trial, this speculation is insufficient to meet his burden of proof on appeal. Jackson v. State, 535 S.W.3d 374, 379 (Mo. App. E.D. 2017).

8

Similarly, there was no fundamental unfairness that resulted from the late disclosure of Exhibit 9, a photograph depicting injuries to C.W.'s face, in that the jury acquitted Denson of both the misdemeanor and felony charges of domestic assault. Denson testified that he did not physically assault C.W., and the jury believed him, despite the admission of Exhibit 9. Thus, the trial court did not abuse its discretion in admitting Exhibit 9. See Zuroweste, 570 S.W.3d at 60.

Points one through eight are denied.

Conclusion

The trial court's judgment of conviction and sentence is affirmed.

_____
Gary M. Gaertner, Jr., P.J.

John P. Torbitzky, J., and
Cristian M. Stevens, J., concur.