**STATE of Missouri, Respondent,**

v.

**James B. SIMPSON, Appellant.**

**No. WD 31300.**

Missouri Court of Appeals,
Western District.

Oct. 1, 1980.

Robert G. Duncan, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

James B. Simpson was convicted in a bench trial of arson in the second degree, § 569.050 RSMo 1978, and was sentenced to a term of two years. He appeals contending that the trial court erred (1) by admitting into evidence a confession obtained during custodial interrogation, and (2) by denying his motion for acquittal because the state failed to prove the fire was of incendiary origin and, hence, no corpus delicti was shown. Affirmed.

On January 23, 1979, an alarm alerted fire fighters to a blaze in progress at a residence in Edgerton, Missouri. The property was rented to one Lee Harris by Vivian Nash, the owner, who lived across the street. Nearby was a tavern where Simpson was seen before the fire and where he was overheard telling friends he was going to Harris' house to recover a rifle he had left as security for a loan. Simpson was observed to leave the tavern and then to return several minutes later. He appeared to be in a hurry and told his friends that he was ready to go and if they did not come along, he would leave without them. As the group was leaving in Simpson's car, the fire alarm sounded.

Investigation of the fire was conducted by the fire marshal's office. Representatives from that office testified at trial that the fire had originated at two unconnected points, one below the basement stairs and the other in the dining room. At each location, there had been a cardboard box with cloth, rug remnants or clothing debris which, in the opinion of the investigators, had been ignited by a human agency.

Simpson was arrested at his home in the evening some four hours after the fire. He was interrogated from 8:25 p. m. until 12:30 a. m. the following morning. In two statements obtained from him during this time, he denied setting the fires but did acknowledge being in the house shortly before the fire alarm sounded. In a third statement, however, Simpson did say that he had set the fires and gave the police officers a cigarette lighter which he stated was used to start the fires.

No claim is made by Simpson that he was not fully informed, before questioning, that he was entitled to remain silent, that he could have the benefit of advice of counsel before and during interrogation and that an attorney's services would be provided if he was unable to secure representation. He does claim that the incriminating statement ultimately given was involuntary because he was twenty years of age and inexperienced in dealing with law enforcement agencies, that the period of interrogation was overly long and in a secluded and restrictive setting, that he was precluded from telephoning his wife until after he confessed and that he was overborne by police representations that they knew he was guilty and leniency would be recommended if he would confess.

When a defendant in a criminal case raises the issue of admissibility of a confession procured by custodial interrogation and contends that the statement was coerced, the burden is on the state to show that the statement was voluntarily made. *State v. Higgins*, 592 S.W.2d 151, 158 (Mo. banc 1979). Whether a statement is voluntary depends on the "totality of the circumstances" and requires an examination on a case by case basis to ascertain if the defendant by physical or psychological means has been effectively deprived of a freedom of choice. *State v. Flowers*, 592 S.W.2d 167 (Mo.banc 1979); *State v. Higgins, supra.* The burden on the state is to show by a preponderance of the evidence that the custodial statement was voluntary. *State v. Olds*, 569 S.W.2d 745 (Mo.banc 1978). If the decision as to voluntariness turns on resolution of conflicting evidence or assessment of credibility, such issues are for the trial court to judge. *State v. Frazier*, 587 S.W.2d 368 (Mo.App.1979).

The state's burden to establish that an in–custodial confession was voluntary is met by a prima facie showing that the defendant was informed of his rights, that he was capable of understanding those rights and that no physical force, threats, promises or coercive tactics were used to

obtain the confession. *State v. Crowley,* 571 S.W.2d 460, 464 (Mo.App.1978). With due regard to the trial court's opportunity to judge the credibility of witnesses and resolve issues on conflicting evidence, the appellate court reviews a finding of voluntariness to determine whether the result is supported by substantial evidence. *State v. Higgins, supra.* After a prima facie showing has been made by the state, if the defendant contends special circumstances render the confession involuntary, it is incumbent upon him to produce evidence to support the contention. *State v. Nolan,* 423 S.W.2d 815, 818 (Mo.1968).

In the present case, Simpson's age and lack of experience in criminal matters, while entitled to consideration in the totality of the circumstances, are not alone sufficient to brand Simpson's statement involuntary. The record does not disclose any facts which would distinguish Simpson as a person of more limited capabilities than others of his same age and background nor does Simpson himself claim that on this account he did not understand the options available to him when subjected to questioning by the police. After the prima facie showing by the state as to the elements of a voluntary statement, it was incumbent on Simpson to produce evidence of special circumstances which, when viewed in the context of his age and experience, deprived him of exercising free choice. This record, however, contains no proof of any such facts.

The second ground, the length and setting of interrogation, also is insufficient on the record to support a contention that Simpson's confession was extracted by coercive measures. While questioning continued for a period of four hours, there is no evidence that the interrogation was in uncomfortable or oppressive conditions, that Simpson was subjected to physical deprivation or that the atmosphere was one of hostility or intimidation. Again, Simpson relies solely on a complaint that questioning for a period of four hours is overly long and that persistence of his questioners after he gave two statements professing innocence is enough to bar the confession as involun-

tary. In the absence of some showing by Simpson that the setting or the rigors of relentless interrogation were such as to overpower his will—a claim which fails here of any significant proof—the prima facie proof adduced by the state required that the confession be received in evidence.

Finally, the contentions that the confession was rendered involuntary by police representations as to other proof that Simpson had set the fires, that a confession would warrant leniency in punishment and that Simpson could contact his wife when an acceptable statement was made are essentially fact questions on which deference must be accorded the trial court. The state's evidence expressly disclaimed any promises made to Simpson concerning disposition of his case with or without a confession. Simpson testified otherwise, but the court was entitled to disbelieve Simpson's self-serving statement and resolve the fact question accordingly. *State v. Curry,* 578 S.W.2d 283, 285 (Mo.App.1979).

As to any inducement provided by representations, true or false, that the investigating officers had other proof of Simpson's guilt, a confession obtained by employment of such means is not thereby rendered involuntary but is nonetheless admissible. *State v. Flowers, supra;* at 169. The claim that Simpson was denied a telephone call to his wife is without any substance because the record shows no evidence that he requested the opportunity to call anyone. In sum, after examining all of the factors and events contemporaneous with Simpson's inculpatory statement, we conclude that in the totality of the circumstances, the statement was not involuntary and was properly received in evidence.

As his second point, Simpson contends that the state's evidence, absent the confession, was insufficient to prove that the fire in the Nash house was of incendiary origin. He follows by asserting that if the elements required to establish the corpus delicti are not independently proven, an extra-judicial admission by the accused cannot be introduced in evidence because proof that a

crime has been committed must precede acknowledgement by the defendant that he was the offender. *State v. Summers*, 362 S.W.2d 537 (Mo.1962), among other cases, is cited.

A submissible case on a charge of arson requires proof that the burning was a willful act of some person and not by natural or accidental means. *State v. Bunton*, 453 S.W.2d 949 (Mo.1970). In reviewing questions as to the sufficiency of the evidence after verdict, the evidence, even where wholly circumstantial, must be viewed in the light most favorable to sustain the conviction and any contrary evidence must be disregarded. *State v. Reed*, 453 S.W.2d 946 (Mo.1970); *State v. Cobb*, 444 S.W.2d 408 (Mo.banc 1969). Arson is a crime usually committed in stealth and seldom in the view of witnesses and, hence, guilt must ordinarily be proven by circumstantial evidence. The incendiary origin of a fire and the guilty agency of the accused may be established by circumstantial evidence. *State v. Parker*, 543 S.W.2d 236, 241 (Mo.App.1976).

Viewed with the above constraints in mind, the evidence here amply satisfied the requisite elements of proof as to the nature and origin of the fire. Two expert arson investigators testified not only that two separate points of the fire's origin were attributable to some human agency, but that an accelerant had been employed and that the cause could not have been an electrical short circuit. Cardboard boxes full of rags and rug remnants and lighting oil were identified as the source points and their presence was even confirmed by Simpson in his own testimony. Simpson's presence in the house shortly before the fire alarm sounded was an established and uncontroverted fact. The incendiary nature of the fire was adequately demonstrated.

Finally, it is important to note that full proof of the corpus delicti is not required before a confession may be admissible. If there is evidence of corroborating circumstances which tend to prove the corpus delicti and which correspond with circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proven. *State v. Page*, 580 S.W.2d 315 (Mo.App.1979); *State v. Hunt*, 570 S.W.2d 777 (Mo.App. 1978).

The judgment is affirmed.

All concur.