STATE of Missouri, Respondent,

v.

Kurt A. STEIDLEY, Appellant.

WD 79348

Missouri Court of Appeals,
Western District.

OPINION FILED: October 3, 2017.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
October 31, 2017.

Application of Transfer Denied
December 19, 2017

Robert J. Bartholomew, Jr., Jefferson City, MO, for respondent.

William B. Gaddy and Jeremy S. Weis, Kansas City, MO, for appellant.

Before Division Three: Alok Ahuja, Presiding Judge, Thomas H. Newton, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Kurt Steidley ("Steidley") appeals from the trial court's entry of judgment convicting him of arson in the second degree. Steidley claims error in the denial of his motion for judgment of acquittal and motion for new trial, error in connection with the denial of evidentiary objections he made at trial, and plain error in failing to interrupt the State's closing argument. We affirm.

## Factual and Procedural Background[1]

Steidley owned Everhart's Sporting Goods ("Everhart's") in Jefferson City. Due to declining success that began in 2008, Steidley decided to close the store near the end of 2010. Steidley held a going-out-of-business sale through December. The last day of business was December 24, 2010.

On December 30, 2010, Steidley returned to Everhart's with Jeff Lister ("Lister"), the store manager. Steidley and Lister turned on one of the ceiling-mounted heaters in the store's warehouse section so that the water pipes would not freeze. Steidley also wanted to shut off all of the other electrical breakers. Lister mentioned that this would disable the store's computer system and the security cameras. Steidley turned off the breakers anyway.

On January 1, 2011, a fire broke out at Everhart's. The subsequent fire investigation revealed that the fire started in a storage corridor of the store's warehouse section. Wooden shelves ran along both walls of the storage corridor. Paper business records sat on the shelves in boxes at the fire's point of origin. The heater that Steidley had left running hung near the point of origin, above the shelves, but closer to the center of the corridor. The drip leg for the gas line to the heater was missing, but was later found nearby on top of the shelves. Without the drip leg attached, natural gas flowed into the building. There was no indication that the drip leg had been forcibly removed or broken. Fire investigators determined that the fire was intentionally set using an ignitable liquid and a hand-held, open flame. Investigators also believed that the drip leg had been intentionally removed to introduce fuel to the fire or to create an explosive atmosphere.

The State charged Steidley with one count of arson in the second degree pursuant to section 569.050.[2] After a jury trial in January 2014, the trial court ordered a new trial for issues unrelated to this appeal. A second jury trial was conducted in September 2015. At the close of the State's evidence, and at the close of all evidence, Steidley moved for judgment of acquittal. The trial court denied both motions. The jury found Steidley guilty of arson in the second degree. Steidley filed a motion for judgment of acquittal or for a new trial, which the trial court denied. The trial court sentenced Steidley to seven years' imprisonment.

Steidley filed this timely appeal. Additional facts will be discussed where relevant to Steidley's points on appeal.

---

1. "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Rice*, 504 S.W.3d 198, 200 n.3 (Mo. App. W.D. 2016).

2. All statutory references are to RSMo 2000 as supplemented through the date of Steidley's offense unless otherwise indicated.

## Analysis

Steidley raises five points on appeal. In his first point on appeal, Steidley argues that the trial court erred in denying his motion for judgment of acquittal because the State presented insufficient evidence of his guilt. In his second point on appeal, Steidley alleges that the trial court erred in denying his motion for new trial because the State failed to disclose federal records under *Brady* [3] and Rule 25.03.[4] Steidley's third point on appeal claims that the trial court abused its discretion in allowing the State to ask leading questions. In his fourth point on appeal, Steidley argues that the trial court plainly erred in failing to interrupt the State's closing argument. In his fifth point on appeal, Steidley asserts that the trial court abused its discretion in admitting a business records affidavit and accompanying hospital records.

## Point I

■ Steidley's first point on appeal argues that the trial court erred in overruling his motion for judgment of acquittal because the State failed to produce sufficient evidence to establish his guilt beyond a reasonable doubt.

■ "Appellate review of sufficiency of the evidence is limited to whether the state has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Hosier*, 454 S.W.3d 883, 898 (Mo. banc 2015). "In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence. All evidence and inferences to the contrary are disregarded." *State v. Nash*, 339 S.W.3d 500, 509

(Mo. banc 2011) (citation omitted). "We defer to the jury's credibility determinations, recognizing the jury was entitled to believe 'all, some, or none' of the testimony of the witnesses." *State v. Wade*, 467 S.W.3d 850, 853 (Mo. App. W.D. 2015) (quoting *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002)).

■ "A person commits the crime of arson in the second degree when he knowingly damages a building or inhabitable structure by starting a fire or causing an explosion." Section 569.050.1. To prove the crime of arson in the second degree, the State must establish three elements: "a building was on fire, the fire was of an incendiary origin, and the defendant participated in commission of the crime." *State v. King*, 453 S.W.3d 363, 374 (Mo. App. W.D. 2015), *abrogated on other grounds by Hoeber v. State*, 488 S.W.3d 648 (Mo. banc 2016). "All elements of arson may be proven by circumstantial evidence." *Id.* (quoting *State v. Bolds*, 913 S.W.2d 393, 398 (Mo. App. W.D. 1996)). In fact, arson "must ordinarily be proven by circumstantial evidence." *Id.* (quoting *State v. Simpson*, 606 S.W.2d 514, 518 (Mo. App. W.D. 1980)). Circumstances surrounding the crime "need not be absolutely conclusive of guilt and need not demonstrate impossibility of innocence." *Id.*

Steidley does not dispute that the Everhart's building was damaged by fire, the first essential element of the crime of second-degree arson. Steidley does, however, contest the sufficiency of the evidence to establish the second and third essentials elements of the crime.

### *The evidence was sufficient to establish that the fire was incendiary*

■ "Evidence of an incendiary origin does not require that there be proof of

---

3. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

4. All Rule references are to *Missouri Court Rules, Volume I—State, 2017* unless otherwise indicated.

some highly combustible material." *Id.* To prove that a fire was of an incendiary origin, "there need only be some evidence, direct or circumstantial, that the person charged intentionally set the property on fire." *Id.*

The State presented testimony from William Farr ("Farr"), a member of the Cole County Fire Protection District, who responded to the fire scene and performed an initial walk-through of the building. Farr testified that the heater near the fire was the only heater receiving electricity with the gas valve in the on position. All other heaters had been turned off. Farr noticed that the drip leg was missing from the heater, which allowed natural gas to flow into the building, causing an explosion hazard. Farr found the drip leg on the nearby shelves covered in black soot, indicating that the drip leg was on the shelves before the fire started. The shelves were not directly under the heater. Farr testified that the drip leg must have been placed on the shelves, and could not have fallen onto them.

The State also presented testimony from Ryan Zornes ("Zornes"), a special agent and certified fire investigator for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Zornes testified that the threading on the drip leg and its counterpart were intact with no signs of stripping or other damage. Zornes concluded that the drip leg was intentionally removed to introduce additional fuel to the fire or to create an explosive atmosphere.

Additionally, Zornes's investigation revealed that densely-packed business records sat on the shelves at the point of origin. Zornes concluded that an ignitable liquid was used to ignite those materials. Zornes also testified that the fire caused heavy damage at the floor level, indicating an ignitable liquid had been used. Zornes found irregular burn patterns on the con-crete floor, indicative of use of an ignitable liquid. Zornes testified that he smelled an odor consistent with an ignitable liquid at the fire's origin. Zornes's investigation eliminated other possible sources of the fire, including the heater, electrical sources, a cigarette, or another incendiary device. Based on his investigation, Zornes determined that the fire had been intentionally set using an ignitable liquid and a hand-held, open flame.

Fire investigator Scott Stoneburger ("Stoneburger") of the Missouri State Fire Marshall's office concluded that the fire was caused by an open flame being applied to an accelerant. Stoneburger made this determination after finding no accidental cause for the fire from any electric, conductive, frictional, or chemical sources. Stoneburger also testified that he smelled the odor of an ignitable liquid and observed linear burn patterns on the concrete floor, both in the area of origin.

The State presented sufficient evidence from which a juror could conclude beyond a reasonable doubt that the fire at Everhart's was of an incendiary origin.

### There was sufficient evidence that Steidley set the fire

■ The State established that Steidley provided inconsistent statements regarding his whereabouts at the time of the fire. Steidley initially told investigators that he was running an errand in Sedalia at the time of the fire. Steidley claimed to Stoneburger and an insurance investigator that the last time he had been in Everhart's was on December 30th with Lister. However, the State introduced Steidley's cell phone records from the night of the fire. The records showed calls made while Steidley was travelling from Knob Noster to Jefferson City. One of these phone calls occurred approximately an hour before the fire was discovered, and pinged a cell tower located near the store. The call was

made to Max Parsons ("Parsons"). At trial, Parsons testified that during the phone call, Steidley said he was inside the Everhart's building and smelled gas. Steidley also asked Parsons how much gas it took to blow up a building. Steidley later told Parsons to lie about the phone call and to say that he and Parsons had been talking about cows.

Lister testified that just days before the fire, Steidley had directed him to turn off all of the electrical breakers, which disabled the computer system and surveillance cameras. The smoke detection system and burglar alarm system had also been turned off at the time of the fire. Viewed in the light most favorable to the verdict, this evidence established that Steidley was at Everhart's near the time of the fire after having disabled surveillance and smoke detection equipment, and thus that Steidley had the opportunity to set the fire.

█ Steidley argues that his opportunity to set the fire was insufficient as a matter of law to support the inference that he did so. However, "[w]hile opportunity alone is insufficient to support an arson conviction, evidence of opportunity and motive aids in determining guilt." *State v. O'Haiver*, 33 S.W.3d 555, 560 (Mo. App. W.D. 2000); *Bolds*, 913 S.W.2d at 398.

The State established Steidley's motive to set the fire. The store's sales had been declining for at least two years before Steidley decided to close the business. In 2010, the business lost $93,700 and only showed a profit during the going-out-of-business sale. There was a mortgage on the Everhart's building in the approximate amount of $1,000,000. Steidley owned fifty percent of the company obligated on the mortgage. Steidley was the personal guarantor on an inventory loan for the store in the approximate amount of $975,000. The Everhart's building and inventory were each insured for $1,000,000.

Steidley's actions leading up to the fire, his inconsistent reports following the fire, and the status of the store's finances were sufficient evidence to permit the inference beyond a reasonable doubt that Steidley set the fire at Everhart's. Though Steidley highlights perceived credibility issues and the lack of direct evidence in his brief, Steidley's claim that insufficient evidence supported his conviction disregards our standard of review. *See Nash*, 339 S.W.3d at 508-09.

Point I is denied.

## Point II

█ In his second point on appeal, Steidley argues that the trial court erred in denying his motion for new trial because the State failed to disclose federal materials relating to Drew Buersmeyer ("Buersmeyer") as required by *Brady* and Rule 25.03. Buersmeyer had been a customer of Everharts whom Steidley claimed owed the business money. Buersmeyer was being investigated by ATF on gun charges. Steidley claims that the State had a duty to disclose federal ATF investigation materials involving Buersmeyer, including a video that depicted Buersmeyer at a gas station with a gas container strapped in the back of his truck. Steidley intimated at trial that Buersmeyer likely set the fire at the store.

█ The trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *State v. William*, 505 S.W.3d 344, 349 (Mo. App. W.D. 2016). "The trial court abuses its discretion when its ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Rios*, 314 S.W.3d 414, 418 (Mo. App. W.D. 2010) (quoting *State v.*

*Stephens*, 88 S.W.3d 876, 881 (Mo. App. W.D. 2002)).

Several months before trial, Steidley filed a routine general motion pursuant to *Brady* and Rule 25.03 requesting that the State disclose impeachment information. This motion was sustained. Just before opening statements at trial, Steidley referred back to this motion and specifically requested information concerning Buersmeyer, including any contact Buersmeyer had with ATF during its investigation of the fire. The State advised that it had turned over all records it had in its possession, and that is was not able to secure any other records from ATF regarding its investigation. The trial court found no discovery or *Brady* violation, and advised Steidley "If there's something else out there, you have to take that up with somebody else, I guess."

In fact, Steidley had already served subpoenas on ATF on September 17, 2015, four days before trial commenced. The State, when discussing Steidley's reference to the earlier filed *Brady* motion between *voir dire* and opening statements, was aware of Steidley's efforts to independently secure information from ATF about its ongoing investigation of Buersmeyer. The State advised the trial court that it did not believe Steidley's efforts would be any more successful than the State's had been.

Though Steidley had not secured subpoenaed records from ATF, he asked Buersmeyer during cross-examination at trial whether he had been interviewed by ATF. Buersmeyer confirmed that he had. Steidley asked Buersmeyer if the ATF agent had mentioned a video that depicted Buersmeyer at a gas station with a gas container in his truck. Buersmeyer acknowledged that a video of this nature had been mentioned during his interview with ATF.

Before resting his case at trial, Steidley made a record regarding his unsuccessful efforts to secure materials from ATF by subpoena. Steidley also reiterated the concern raised between *voir dire* and opening statements that the State had been obligated to secure the ATF documents pursuant to either *Brady* or Rule 25.03. After Steidley's counsel explained that the subpoenaed materials could contain potentially relevant information, the trial court responded by asking "So what do you want me to do?" Steidley's counsel replied, "I have no further requests. I just wanted to make a record."

 Steidley argued in his post-trial motion for new trial that the State's failure to provide him with ATF materials regarding Buersmeyer violated a variety of identified state and federal constitutional rights. The trial court did not abuse its discretion when it denied this motion.

> Under *Brady v. Maryland*, due process is violated when the prosecutor suppresses evidence that is favorable to the defendant and material to either guilt or punishment....*Brady*, however, only applies in situations where the defense discovers information after trial that had been known to the prosecution at trial. If the defendant had knowledge of the evidence at the time of trial, the State cannot be faulted for nondisclosure.

*State v. Salter*, 250 S.W.3d 705, 714 (Mo. banc 2008) (citations omitted). Steidley clearly had knowledge of Buersmeyer's interview with ATF and of the alleged videotape at the time of trial. *Brady* does not apply, even assuming the State could be faulted for nondisclosure of these materials.

 Independent of *Brady*, Rule 25.03(A)(9) requires the State to disclose "[a]ny material or information, within the possession or control of the state, which tends to negate the guilt of the defendant

as to the offense charged, mitigate the degree of the offense charged, or reduce the punishment." This includes material or information in the possession or control of other government personnel:

> If the defense in its request designates material or information which would be discoverable under this Rule if in the possession or control of the state, but which is, in fact, in the possession or control of other governmental personnel, the state shall use diligence and make good faith efforts to cause such materials to be made available to the defense counsel....

Rule 25.03(C). This rule "imposes an affirmative requirement of diligence and good faith on the state to locate records not only in its own possession or control but also in the control of other governmental personnel." *State v. Clark*, 486 S.W.3d 479, 485 (Mo. App. W.D. 2016) (quoting *Merriweather v. State*, 294 S.W.3d 52, 55 (Mo. banc 2009)). "The determination of whether the State violated a rule of discovery rests within the sound discretion of the trial court." *State v. Willis*, 2 S.W.3d 801, 803 (Mo. App. W.D. 1999); *State v. Johnson*, 513 S.W.3d 360, 364 (Mo. App. E.D. 2016). "The trial court has discretion to impose sanctions for discovery violations under Rule 25.03." *State v. Taylor*, 298 S.W.3d 482, 502 (Mo. banc 2009).

■ Although Steidley's point on appeal alleges error in the denial of his motion for new trial based on the State's violation of Rule 25.03, his motion for new trial did not definitively allege that the State violated Rule 25.03, preserving nothing for our review. Rule 29.11(d) ("In jury-tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial...."). In any event, the materials Steidley requested were in the possession and control of ATF, another governmental entity. Rule 25.03(C) provides that "if the state's efforts [to secure materials] are unsuccessful *and such material or other governmental personnel are subject to the jurisdiction of the court*, the court, upon request, shall issue suitable subpoenas or orders to cause such material or information to be made available to the state for disclosure to the defense." Rule 25.03(C) (emphasis added). Rule 25.03(C) "provides a means for the defense to try to obtain information or materials which is not in the possession or control of the State, but of which the State is aware." *State v. White*, 931 S.W.2d 825, 831 (Mo. App. W.D. 1996). Steidley initiated subpoenas in an effort to secure records in ATF's possession. Steidley has not established, however, that records in the hands of ATF were subject to the trial court's jurisdiction. Assuming they were, the trial court did not abuse its discretion in concluding that the State did not violate its duty to disclose pursuant to Rule 25.03(A)(9). *See State v. Brooks*, 960 S.W.2d 479, 494 (Mo. banc 1997) ("A court will not presume that the prosecution acted in bad faith.").

■ It is significant that although Steidley made a record before the close of his evidence about his efforts to secure records from ATF, he did not request any other relief from the trial court based on his pending subpoenas (and in particular the video showing a gas can in Buersmeyer's truck), such as a continuance or a mistrial. "A trial court will not be faulted for failing to take corrective action, when that action is not requested." *State v. Francis*, 60 S.W.3d 662, 671 (Mo. App. W.D. 2001).

■ Finally, even if the trial court could have concluded (as Steidley argues) that the State had more control over production of the ATF interview and video than the State represented, given ATF's participation in the investigation of the

Everhart's fire, Steidley has not demonstrated any prejudice warranting relief. Steidley asked Buersmeyer about his preliminary interview with ATF and about the referenced video during cross-examination. Buersmeyer confirmed the interview, and that ATF claimed to have a video of him with a gas can in the back of his truck. Steidley has not identified any other information that ATF materials would have revealed. Additionally, Stoneburger testified that the investigation into Buersmeyer cleared him of any involvement in the fire. A report regarding the interview, and the video itself if it exists, would have been cumulative of Buersmeyer's testimony. In the absence of any prejudice, the trial court did not abuse its discretion in refusing to "sanction" the State's alleged violation of Rule 25.03(A)(9). *Taylor*, 298 S.W.3d at 502 ("A trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant.") (quoting *State v. Edwards*, 116 S.W.3d 511, 534 (Mo. banc 2003)).

Point II is denied.

### Point III

In Point III, Steidley argues that the trial court erred in denying his motion for new trial after allowing leading questions at trial over his objection. Specifically, Steidley points to improper questioning by the State during its direct and redirect examinations of Parsons.

■ On direct examination, Parsons testified that Steidley told him that he was at Everhart's on the day of the fire, climbed on a shelf to shut off the gas, and fell and hit his head. Steidley also told Parsons that he got knocked out, but woke up in his truck without knowing how he got there. Later, Parsons testified that Steidley thought Buersmeyer had burned

the building. The State asked Parsons if Steidley explained what specifically Buersmeyer had done, to which Parsons replied, "No. Not really, no." Then, the State asked, "Did he tell you that he thought this [Buersmeyer] had pulled him off the shelf when he was in there?" Steidley's counsel objected, and the trial court required the State to rephrase the question. The State rephrased by asking, "When he mentioned that he thought someone, [Buersmeyer], had burned it, did he tell you what he thought [Buersmeyer] had done to burn it?" Parsons replied affirmatively, then testified that Steidley thought Buersmeyer was in the building setting the fire, found Steidley on the shelf, yanked him from the shelf, and placed him in his truck.

■ The question Parsons answered following Steidley's sustained objection was not a leading question. Steidley acknowledges as much, but argues error nonetheless, claiming the damage had already been done by virtue of the State's initial question. However, Steidley did not seek any relief from the trial court beyond his successful objection to the State's leading question. We will not convict the trial court of error not brought to its attention at the time of trial. *Francis*, 60 S.W.3d at 671. Moreover, even had Steidley sought additional relief from the trial court beyond his sustained objection, it is unlikely it would have been afforded. By the time of the State's objectionable question, Parsons had already testified that Steidley called him from Everhart's and had claimed to have hit his head. "A defendant is not prejudiced when allegedly improper evidence was merely cumulative to other evidence admitted without objection establishing the same facts." *State v. Hutson*, 487 S.W.3d 100, 108 (Mo. App. W.D. 2016). Though Parson's testimony following Steidley's sustained objection added the

additional fact that Steidley believed Buersmeyer was at Everhart's, pulled him off a shelf, and set the fire, this could hardly be considered prejudicial to Steidley, whose trial strategy relied heavily on Buersmeyer's alleged responsibility for the fire.

Steidley also complains that on redirect examination of Parsons, the State asked Parsons a series of leading questions, asking him to confirm various statements he made to ATF during a proffer interview.[5] The State read from a report of the proffer interview, and requested "yes" or "no" responses from Parsons to confirm his statements. Steidley's objection that these questions were leading was overruled.

"The trial court retains the discretion to allow leading questions, and the court's decision will be overturned only if it constitutes an abuse of discretion." *State v. McFadden*, 391 S.W.3d 408, 431 (Mo. banc 2013). "The appellate court reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Hutson*, 487 S.W.3d at 107. "Trial court error is prejudicial if there is a reasonable probability that the court's error affected the outcome of the trial." *Id.* (quoting *State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011)).

Steidley objected when the State asked Parsons to confirm that during his proffer interview he told ATF: that he had lied in a previous interview; that Steidley said he was going into Everhart's to turn off the gas; and that Steidley later said that he was driving back to his residence without having turned off the gas. Though these questions were technically leading in na-

ture, we do not find an abuse of discretion in denying Steidley's objection. The facts confirmed by reference to Parsons's proffer interview had already been established during Parson's direct testimony without objection, and during cross-examination by Steidley's counsel. Steidley fails to demonstrate how he was prejudiced when the same facts were confirmed by Parsons on redirect in the context of confirming statements he made to ATF.

Point III is denied.

## Point IV

Steidley's fourth point on appeal claims that the trial court plainly erred in failing to *sua sponte* interrupt the State's closing argument. Steidley contends that during closing argument, the State inappropriately referenced the risk of death that firefighters faced when putting out the fire at Everhart's.

Steidley concedes that he failed to object during the State's closing argument, and therefore, failed to properly preserve this issue for appellate review. *State v. Barker*, 410 S.W.3d 225, 234 (Mo. App. W.D. 2013). "Thus, our review of [Steidley's] claim that the trial court failed to *sua sponte* declare a mistrial or issue a curative instruction is limited to plain error." *Id.*

"Plain error will seldom be found in unobjected to closing argument." *State v. Ramirez*, 447 S.W.3d 792, 798 (Mo. App. W.D. 2014) (quoting *State v. Radley*, 904 S.W.2d 520, 524 (Mo. App. W.D. 1995)). "Reviewing courts will rarely find plain error in closing remarks when the challenging party did not object at trial because any action on the part of the court would be uninvited." *State v. Carter*, 415 S.W.3d 685, 691 (Mo. banc 2013). "The

---

5. A proffer interview is generally an interview in which a witness agrees to cooperate with the State in exchange for not being prosecut-

ed. *See, e.g., Proffer Meeting, Black's Law Dictionary* (10th ed. 2014); *Cf. Immunity, Black's Law Dictionary* (10th ed. 2014).

defendant's failure to object to an improper argument is often strategic, and uninvited intervention may emphasize the matter in a way the defendant chose not to." *Id.*

For these reasons, "[a] conviction will be reversed based on plain error in closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." *State v. Walter*, 479 S.W.3d 118, 124 (Mo. banc 2016) (quoting *Edwards*, 116 S.W.3d at 536-37). In reviewing a closing argument, an appellate court "examines the context of the argument made in light of the entire record." *Id.*

At trial, the responding firefighters testified to a concern that the roof would collapse while they were in the building. The roof supported heavy heating, ventilation, and cooling equipment, and multiple witnesses explained that the fire weakened the roof's supporting structure. The State also presented testimony that gas in the building increased the risk of an explosion. During closing argument, the State made multiple references to the risk of death or injury that the firefighters faced at the Everhart's fire. These references were made in conjunction with an argument that Steidley disregarded known risks in favor of greed, likely as an effort to demonstrate motive.

Because the State's comments referred to matters presented by the evidence, and the reasonable inferences that could be drawn from that evidence, we do not find a manifest injustice in the trial court's failure to intervene *sua sponte*. "During closing argument, the state is allowed to argue the evidence and all reasonable inferences from the evidence." *Id.* at 125. Additionally, as outlined in our discussion of Point I, the State presented overwhelming evidence of Steidley's guilt. Steidley fails to show how the State's comments during closing argument, even if inappropriate, had a decisive effect on the outcome of the trial in light of the entire record. "The burden to prove decisive effect is on the appellant." *State v. Anderson*, 306 S.W.3d 529, 543 (Mo. banc 2010). The trial court did not commit error, plain or otherwise, in allowing the State's closing argument to proceed uninterrupted.

Point IV is denied.

### Point V

In Point V, Steidley asserts that the trial court abused its discretion in denying his motion for new trial after admitting a business records affidavit and accompanying hospital records over Steidley's objection. The affidavit was used to support admission of hospital records regarding treatment Steidley received on the day of the fire. The State introduced Steidley's hospital admission records during an ATF agent's testimony using an affidavit signed by the hospital's custodian of records. The hospital admission records indicated that Steidley reported elbow pain after falling and landing on his elbow. The hospital records undermined Steidley's credibility, as they contradicted Steidley's report to an ATF agent that he sustained a head injury on the day of the fire at his home, and his statement to Parsons that he sustained a head injury at Everhart's.

Steidley argues that the affidavit used to introduce his hospital records failed to comply with the requirements of section 490.680 because it did not include a description of the mode or method of preparation. "The trial court has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion." *State v. Hart*, 404 S.W.3d 232, 248 (Mo.

banc 2013). "Reversal due to an evidentiary error requires a showing of prejudice." *State v. Hartman*, 488 S.W.3d 53, 57 (Mo. banc 2016) (quoting *State v. McFadden*, 369 S.W.3d 727, 736 (2012)). "If there is a reasonable probability that the trial court's error affected the outcome of the trial, there is prejudice." *Id.*

As an exception to the rule against hearsay, a business record is admissible at trial:

> [I]f the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Section 490.680. The foundational requirements of establishing the source of information, the mode or method of preparation, and the time of preparation are permitted to be established by affidavit pursuant to section 490.692.1, which provides that "business records, or copies of business records, are admissible upon the affidavit of the custodian of records stating that the records attached to the affidavit were kept as required by section 490.680." *State v. Simmons*, 270 S.W.3d 523, 530 (Mo. App. W.D. 2008). "Section 490.692 allows the records custodian, and the person who originally prepared the reports, to avoid a personal appearance." *State v. Calhoon*, 7 S.W.3d 494, 495 (Mo. App. W.D. 1999). "All business records, including medical records, may be admitted under section 490.692, if they comply with it and section 490.680." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 102 (Mo. App. W.D. 2006).

"[S]ection 490.692.3 provides an example of the form the affidavit may take and the content it may include." *Simmons*, 270 S.W.3d at 530. Section 490.692.3 provides that "[t]he affidavit permitted by this section may be in the form and content substantially as follows," and offers the following language:

> These [blank] pages of records are kept by [blank] in the regular course of business, and it was the regular course of business of [blank] for an employee or representative of [blank] *with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record*; and the record was made at or near the time of the act, event, condition, opinion or diagnosis.

Section 490.692.3 (emphasis added).

The affidavit used to admit Steidley's hospital records provided as follows:

> Before me, the undersigned authority, personally appeared, Gail Minner, who being by me duly sworn, deposed as follows:

> My name is Gail Minner, I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

> I am the custodian of records of WESTERN MISSOUR[I] MEDICAL CENTER, Warrensburg, MO 64093. Attached hereto are 20 pages of records from said health care provider concerning Kurt Steidley. These 20 page[s] of records are kept by me in the regular course of business, and it was the regular hours of representative thereof with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record made at or near the time of the act, event, condition, opinion or diagnosis. The records attached hereto are the original or exact duplicate of the original.

Steidley does not argue that the affidavit failed to satisfy the foundational requirements for source of information or time of preparation, and instead argues only that the affidavit neglects to identify the mode or method of preparation.[6] We disagree. The affidavit indicates it was prepared by a records custodian with respect to records maintained in the regular course of business during the custodian's regular hours of work. The affidavit is not materially distinguishable from the format authorized by section 490.692.3. The trial court did not abuse its discretion in finding that the affidavit supported the admission of the hospital's business records. *See Meurer v. Dir. of Revenue*, 984 S.W.2d 873, 877 (Mo. App. E.D. 1999) (holding that records were properly admitted as business records where the custodian of records "prepared an affidavit which conforms substantially with the form and content of the exemplar in section 490.692.3").

■■■ Undeterred, Steidley claims that he suffered prejudice because admission of the hospital records violated his Sixth Amendment right to confront a witness. When objecting to the admission of the hospital records at trial, Steidley argued only generally that their admission would violate his rights "under the Missouri Constitution and the Constitution of the United States." This was insufficient to preserve a claim of violation of the Sixth Amendment's confrontation clause for appellate review. "To preserve constitutional claims or errors for appellate review, they must be raised at the first opportunity with citations to specific constitutional sections." *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012); *see also State v. Gannaway*, 497 S.W.3d 819, 822-23 (Mo. App.

S.D. 2016) (holding that a defendant's objection based on "a violation of due process and a violation of ... rights under both the United States Constitution and the Missouri" was not sufficiently specific to preserve the constitutional issue for appeal). Although Steidley argued at the close of the evidence and again in his motion for new trial that the admitted hospital records violated his Sixth Amendment right to confrontation, Steidley failed to raise this specific constitutional objection at the time the records were first admitted. *Tisius*, 362 S.W.3d at 405.

In any event, even had Steidley preserved this issue by timely raising his constitutional concern to admission of the hospital records, we are not persuaded his objection would have been sustained. Business records of this sort tend to be excluded from the scope of the Sixth Amendment's confrontation clause as they were not prepared in anticipation of criminal proceedings and are therefore not testimonial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) ("Business ... records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.").

■■ In addition, though Steidley summarily advances this argument in his brief, he cites no authority for the argument, and fails to explain how the admission of a business record containing a statement by Steidley in the nature of an admission

---

**6.** Steidley does not argue that the State failed to comply with section 490.692.2 which requires a party intending to offer business records by affidavit to serve the records on the opposing party at least seven days before trial.

We thus assume that the State complied with this obligation, affording Steidley with sufficient time to subpoena the records custodian to appear at trial to be cross-examined about her affidavit.

against interest constituted testimonial evidence that violated the confrontation clause, preserving nothing for our review. "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Kimble v. Div. of Emp't Sec.*, 388 S.W.3d 634, 641 (Mo. App. W.D. 2013) (quoting *Al-Hawarey v. Al-Hawarey*, 388 S.W.3d 237, 246 (Mo. App. E.D. 2012)).

Point V is denied.

## Conclusion

The judgment of the trial court is affirmed.

All concur