

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110548 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 1822-CR03758-01 |
| | ) | |
| RACHEL NIXON, | ) | Honorable Michael W. Noble |
| | ) | |
| Respondent. | ) | Filed: May 30, 2023 |

## Introduction

The State of Missouri appeals from the trial court's judgment dismissing the criminal charges against Rachel Nixon (Nixon) with prejudice.[1] The State argues the trial court plainly erred in finding both that the State made a willful or bad faith discovery violation and that the State violated Nixon's right to a speedy trial. We reverse and remand for the trial court to reinstate the charges against Nixon.

## Background

In a January 2019 indictment, the State charged Nixon with one count of the class A felony of murder in the second degree, one count of the class A felony of robbery in the

---

[1] The trial court dismissed charges against both Rachel Nixon and co-defendant Karen Quinn on the basis that the State's continuing discovery violations violated Nixon's and Quinn's rights to a fair and speedy trial. Accordingly, our opinion in co-defendant Quinn's companion case, State v. Quinn, No. ED110549, slip op. (Mo. App. E.D. May 30, 2023), handed down this same day, is substantially similar to our opinion here.

first degree, and two associated counts of armed criminal action (ACA). The probable cause statement and indictment alleged that on or about April 15, 2018, Nixon, Ammizabad Johnson (Johnson),[2] Karen Quinn (Quinn), and Darean Marshall (Marshall),[3] acting together, enticed Jerome Boyd, Jr. (Victim) to an address under the guise of a purported illicit drug transaction. After Victim arrived at the address, Nixon entered Victim's vehicle and directed him to a second address where the others were waiting. At the second address, one of the co-defendants fired multiple shots at the front of Victim's vehicle, and Quinn or Johnson entered the back seat of the vehicle and shot Victim in the back of the head, causing his death. The co-defendants also stole controlled substances and a radio amplifier in the possession of Victim.

Nixon initially requested, as relevant to this appeal, disclosure of the substance of any oral statements by Nixon or a co-defendant, and any potentially exculpatory information known to the State. The State made multiple disclosures, including DVD and CD copies of interviews with Johnson, Marshall, Nixon, and Quinn. The State asserted it was not aware of any non-disclosed material or information within its possession or control that would tend to negate Nixon's guilt, mitigate the degree of the offense charged, or reduce her punishment.

The discovery material at issue in this appeal is a report written by Special Agent Robin O'Quinn (Special Agent O'Quinn) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) following an interview she and St. Louis Metropolitan Police Detective

---

[2] Johnson later pleaded guilty to the class D felony of unlawful possession of a firearm and to the class C felony of delivery of a controlled substance. The State dismissed the charges of murder in the first degree and ACA by *nolle prosequi*. Case No. 1822-CR03776-01.

[3] Marshall later pleaded guilty to the class C felony of delivery of a controlled substance, and the State dismissed the charges of murder in the second degree and two counts of ACA by *nolle prosequi*. Case No. 1822-CR03775-01.

Chris Flaugher (Detective Flaugher) conducted with Nixon's co-defendant Quinn on October 15, 2018. The record first references this ATF report following a joint pre-trial hearing on September 30, 2021 for <u>State v. Nixon</u>, Case No. 1822-CR03776-01, and <u>State v. Quinn</u>, Cause No. 1822-CR03777-01, where the trial court ordered the State to provide "Defendant Quinn's requested ATF report by October 14, 2021."

In February of 2022, Nixon filed a motion for sanctions for violations of the discovery rules contained in Rule 25[4] for the State's failure to disclose a report of the contents of and witnesses to co-defendant Quinn's interview with ATF. Nixon asserted in her motion and at a hearing on the motion that during a July 2021 deposition of St. Louis Metropolitan Police Detective Wallace Leopold (Detective Leopold), lead homicide detective in this case, he had revealed that Special Agent O'Quinn and Detective Flaugher had questioned Quinn in her home on October 15, 2018. Detective Leopold testified that Detective Flaugher is a detective in the St. Louis Metropolitan Police Department intelligence unit who was working with ATF agents doing follow-up investigations with gun owners. Detective Leopold further testified, however, that he did not know the contents of Quinn's interview with Detective Flaugher and Special Agent O'Quinn because he had not received a report of the interview. Detective Leopold subsequently interviewed Quinn on October 16 and October 18, 2018, and during the course of those interviews, she made statements implicating herself, Nixon, Johnson, and Marshall. Following Quinn's interviews with Detective Leopold, Nixon was interviewed on October 29, 2018 and made incriminating statements.

---

[4] All rule references are to Mo. R. Crim. P. 2018, unless otherwise stated.

Nixon asserted in her motion for sanctions that after Detective Leopold's deposition, she had informally requested a copy of the ATF report from the State, and the State agreed to request it from ATF, but by February of 2022 the State still had not disclosed the ATF report. At the hearing on Nixon's motion, the State explained it had recently been in direct contact with Special Agent O'Quinn and had "start[ed] a process internally [with ATF] with formal paperwork request for information so that – I guess some internal review, and they'll either sign off on it or not." The State clarified that neither the Circuit Attorney's office nor the St. Louis Metropolitan Police Department possessed a copy of the ATF report.

As sanctions, Nixon requested that the trial court exclude both Quinn's statements to ATF on October 15, 2018 and to the St. Louis Metropolitan Police Department on October 16 and 18, 2018, and also the statements Nixon made to law enforcement at her interview on October 29, 2018. The trial court granted Nixon's motion in part and excluded her statements made to law enforcement on October 29, 2018, but the trial court denied her motion to exclude the statements of all co-defendants.

On March 7, 2022, Nixon filed a motion to dismiss for the State's continued failure to disclose co-defendant Quinn's statements to ATF, arguing that without this discovery material Nixon could not fairly proceed to trial, but also that further delays to allow the State to produce the ATF report would violate her right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments. Specifically, she argued if Quinn planned to testify against Nixon at trial, the State was obligated to disclose Quinn's statements for potential impeachment purposes under Brady v. Maryland, 373 U.S. 83, 87 (1963), and its progeny.

After a hearing, the trial court found the ATF report of Quinn's interview on October 15, 2018 contained potential Brady evidence but the State "still [did] not have the compelled discovery … and could not provide a timeline for producing it." The trial court concluded the State's failure to produce this evidence had prejudiced Nixon and that any further delays would violate her right to a speedy trial. Accordingly, the trial court dismissed the charges against Nixon with prejudice.

The State filed a motion for reconsideration, arguing it did not fail to comply with Rule 25.03. In its motion, the State detailed the efforts it had made to secure a copy of the ATF report, including that on October 25, 2021 it issued ATF a subpoena with a court order. As well, the State asserted it had sent Special Agent O'Quinn an updated request for the ATF report in February of 2022 and had again followed up with Special Agent O'Quinn in April of 2022 to no avail.

At a hearing on the State's motion, the trial court determined it no longer had jurisdiction to consider the State's motion for reconsideration. This appeal follows.

## Standard of Review

The State concedes that its claims are not preserved for appellate review because it did not raise the arguments it now asserts on appeal before the trial court dismissed the case with prejudice. A dismissal with prejudice prior to trial in a criminal case is a final judgment, and the trial court loses jurisdiction over a criminal case once it enters a final judgment. State v. Burns, 994 S.W.2d 941, 942 (Mo. banc 1999). The State did not raise the arguments presented on appeal until its motion for reconsideration, which was filed after the trial court had lost jurisdiction. See id.

Nevertheless, the State requests plain error review under Supreme Court Rule 30.20. Plain-error review is a two-step process. First, we determine whether the record facially establishes substantial grounds to believe plain error occurred, which is error that is evident, obvious, and clear, resulting in manifest injustice or a miscarriage of justice. State v. McCleary, 423 S.W.3d 888, 896 (Mo. App. E.D. 2014). If the first step is met, then we may consider whether the error actually resulted in manifest injustice or a miscarriage of justice. Id. Where the trial court has erroneously dismissed criminal charges, manifest injustice or a miscarriage of justice will occur if the error was outcome determinative and undermines faith in the criminal justice system. See State v. Jackson-Kuofie, 646 S.W.3d 312, 316-17 (Mo. App. W.D. 2022).

## Point I

In its first point, the State argues the trial court plainly erred in dismissing the charges against Nixon with prejudice because the State did not violate discovery rules by failing to disclose the ATF report. The State further argues this plain error resulted in manifest injustice because the State was unable to prosecute Nixon for murder, robbery, and ACA. We agree.

Rule 25.03(b)[5] provides that the State "shall, upon written request of defendant's counsel, disclose to defendant's counsel the following material and information within its

---

[5] Rule 25.03 provides the following disclosure requirements for the State in misdemeanor or felony cases, as relevant:

> …
> (b) Disclosure after indictment or filing of information. Except as otherwise provided in these Rules, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel the following material and information within its possession or control designated in the request:
>> (1) Any arrest reports, incident reports, investigative reports, written or recorded statements, documents, photographs, video, electronic communications and electronic data that relate to the offense for which defendant is charged;

possession or control designated in the request: (1) [a]ny arrest reports, incident reports, investigative reports, written or recorded statements … that relate to the offense for which defendant is charged." Likewise, the State must disclose to the defendant, even without written request, any material or information that tends to negate the defendant's guilt for the charged offense. Rule 25.03(g). Moreover, if the material or information would be discoverable under Rule 25.03(b) and (g) if it were in the possession or control of the State, but is in fact in the possession or control of other governmental personnel, the State "shall use diligence and make good faith efforts to make the material or information available to defendant." Rule 25.03(h). Should the State be unsuccessful in its efforts and the material or information of the other governmental personnel is subject to jurisdiction of the court, the court, upon request, shall issue subpoenas or orders to cause the material or information to be available to the State for disclosure to the defense. Rule 25.03(h).

---

(2) The names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements;

(3) Any written or recorded statements and the substance of any oral statements made by defendant, a co-defendant or a co-actor, a list of all witnesses to the making of the statements and a list of all witnesses to the acknowledgment of the statements including the last known addresses of the witnesses;

…

(g) The state shall, without written request, disclose to defendant any material or information that tends to negate the guilt of defendant for the charged offense, mitigate the degree of the offense charged, reduce the punishment of the offense charged, and any additional material or information that would be required to be disclosed to comply with Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972) and their progeny.

(h) If material or information would be discoverable under subsections (b) and (g) of this Rule if in the possession or control of the state, but is in possession or control of other governmental personnel, the state shall use diligence and make good faith efforts to make the material or information available to defendant. If the state's efforts are unsuccessful and the material or information or other governmental personnel are subject to the jurisdiction of the court, the court, upon request, shall issue subpoenas or orders to cause the material or information to be made available to the state for disclosure to the defense.

The purpose of the rules of criminal discovery is to prevent surprise "by allowing both sides to know the witnesses and evidence to be introduced at trial." State v. Zuroweste, 570 S.W.3d 51, 56 (Mo. banc 2019) (citation omitted); see also State v. Johnson, 513 S.W.3d 360, 364 (Mo. App. E.D. 2016). Rule 25.03(h) places an affirmative requirement of diligence and good faith on the State to attempt to locate evidence in the control of other governmental personnel, but Rule 25.03(h) does not require the State to be successful in its efforts. See State v. Steidley, 533 S.W.3d 762, 772 (Mo. App. W.D. 2017) (finding no Rule 25.03 violation although State had been unable to secure requested evidence from ATF). Whether the efforts by the State to obtain material in the control of other governmental personnel constituted diligence and good faith under Rule 25.03(h) is a question of fact. Merriweather v. State, 294 S.W.3d 52, 56 (Mo. banc 2009).

Next, if the trial court finds the State has violated Rule 25.03, the trial court has the discretion to impose sanctions under Rule 25.18. We review a trial court's decision whether to impose sanctions for an abuse of discretion and will reverse for an abuse of that discretion only where the trial court's ruling resulted in fundamental unfairness. See Zuroweste, 570 S.W.3d at 56. Fundamental unfairness occurs when there was a reasonable likelihood that timely disclosure of evidence would have affected the result of the trial. See Johnson, 513 S.W.3d at 365.

Here, Nixon asserted that after Detective Leopold's deposition, in which he acknowledged the ATF report, the State had agreed to request the report from ATF and disclose it to Nixon, in response to her informal request. Moreover, at a joint pre-trial hearing on September 30, 2021 for both Nixon and Quinn, the trial court ordered the State to disclose the ATF report to the defendants. This triggered the State's burden under Rule

8

25.03(b) and (h) to use diligence and make good faith efforts to make this material available to Nixon.  See Zuroweste, 570 S.W.3d at 57.

Our review of the record shows the State engaged in the following efforts to obtain the ATF report.  In February of 2022, the State explained it had recently been in direct contact with Special Agent O'Quinn and had "start[ed] a process internally [with ATF] with formal paperwork request for information so that – I guess some internal review, and they'll either sign off on it or not."  In addition, while not before the trial court prior to its dismissal with prejudice, the record on appeal includes the State's assertions that it had made informal requests for the ATF report from Special Agent O'Quinn in October of 2021 and in April of 2022, and that the State had also provided ATF with a subpoena and court order requesting the report on October 25, 2021.  Despite these efforts, ATF did not deliver the report of its October 15, 2018 interview with Quinn to the State.

However, the State's mere failure to disclose requested information does not by itself establish a violation of Rule 25.03(h).  Rule 25.03(h) requires only that the State use diligence and good faith in attempting to obtain discovery from other governmental personnel.  The rule specifically recognizes that the State may be unsuccessful in its efforts, and, accordingly, it provides that "if the information of the other governmental personnel is subject to the jurisdiction of the court, the court, upon request, shall issue a subpoena and order to cause the material or information to be available." Rule 25.03(h). We consider two aspects of this rule separately.

First, looking at the subpoena authority of Rule 25.03(h), Missouri courts have interpreted this language as "providing a means for the defense to try to obtain information or materials which is not in the possession of the State but of which the State is aware."

See Steidley, 533 S.W.3d at 772. Where the State has attempted without success to obtain the requested discovery from other governmental personnel despite diligence and good faith efforts, either party is equally able to request a subpoena and court order for the material. See id. Nixon cannot decline to make any efforts to secure discovery of which she is aware and that the State has unsuccessfully attempted to secure, and then demand dismissal for the State's failure to obtain material in possession of a federal agency. See State v. Spencer, 50 S.W.3d 869, 878 (Mo. App. E.D. 2001) ("prosecution has no obligation to disclose evidence of which the defense is already aware and which the defense can acquire") (quoting State v. Brooks, 960 S.W.2d 479, 498 (Mo. banc 1997)).

Second, we consider whether "the information of the other governmental personnel [was] subject to the jurisdiction of the court." The State argues the trial court plainly erred in granting Nixon's motion to dismiss for discovery violations because the trial court failed to determine whether the ATF report was subject to the jurisdiction of the court. Under our plain-error review,[6] we find the trial court did not have jurisdiction over the ATF report and thus plainly erred, resulting in manifest injustice, in dismissing the charges with prejudice for the State's failure to produce the ATF report.

As a federal law enforcement agency, ATF was not required to comply with a state-court order and subpoena for information or testimony, regardless of which party requested the information. ATF is a law enforcement agency that falls under the United States Department of Justice. See 6 U.S.C. § 531 (2006). As part of the United States Department

---

[6] Although the State raised the issue of the trial court's jurisdiction over the requested materials, the State did not fully develop the argument in its brief. Nevertheless, the trial court's lack of jurisdiction over the requested materials is dispositive, and we exercise our discretion to consider it. See Rule 30.20 ("[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom").

of Justice, ATF agents are executive branch employees subject to federal regulations. See 5 U.S.C. § 301 (2001).

Federal regulations 28 C.F.R. §§ 16.21-16.26, known as the Touhy regulations, limit disclosure of information in legal proceedings. These federal regulations prohibit current or former subordinates of the United States Department of Justice from producing documents or providing testimony in response to state-court subpoenas and orders in cases where the United States is not a party, unless the appropriate agency official authorizes disclosure. 28 C.F.R. §§ 16.21(a), 16.22(a); United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951) (approving United States Department of Justice regulation requiring United States Attorney General's approval before FBI agent could release official documents). In essence, the Touhy regulations act as a jurisdictional limitation on a state trial court's authority.

The record here suggests that the State had in fact made a Touhy request from ATF for its report of the October 15, 2018 interview with Quinn, but that ATF had not complied with the request. At Nixon's motion for sanctions, the State said it had "start[ed] a process internally [with ATF] with formal paperwork request for information so that – I guess some internal review, and they'll either sign off on it or not." This recognizably describes the internal review and approval process of a Touhy request. After making the Touhy request, neither the State nor the trial court had the authority to demand compliance from ATF to produce the report.[7] The State cannot be penalized for failing to disclose evidence it was

---

[7] Rather, to the extent Nixon argues the information contained in the ATF report included potential Brady material, the report was equally, if not more, available to Nixon. See Kasi v. Angelone, 300 F.3d 487, 506 (4th Cir. 2002) (state criminal defendant who seeks investigative file materials from federal agency must comply with Touhy regulations, and, if aggrieved by response of federal law enforcement agency, state criminal defendant has remedy to seek potential Brady material before U.S. District Court, which has authority to compel federal law-enforcement agency to produce requested information).

not authorized to obtain. Thus, the trial court erred in finding the State violated Rule 25.03(h) by failing to disclose the ATF report that was in the sole possession of ATF and was not subject to the jurisdiction of the trial court.

Likewise, to the extent Nixon suggests the State was obligated under Rule 25.03(h) to contact Detective Flaugher to learn the substance of the ATF report and the October 15, 2018 interview, we question whether the State would have been allowed to circumvent the Touhy regulations in this manner. According to the United States Department of Justice's own rules, "[a] state or local law enforcement officer assigned to a joint task force or other working group of a federal law enforcement agency is included within [the definition of 'employee of the United States' for purposes of 28 C.F.R. § 16.21(b)] to the extent the subpoena or demand relates to his or her work on the task force." See The United States Department of Justice, Justice Manual, Title 1: Organization and Functions, section 1-6.111 – Definitions – "Employee," https://www.justice.gov/jm/jm-1-6000-doj-personnel-witnesses (last visited April 20, 2023).

As far as the record here shows, Detective Flaugher is an officer with the St. Louis Metropolitan Police Department who apparently was working on a federal task force with ATF agents assisting with a federal investigation.[8] Information discovered as part of that federal task force would be subject to federal rules, including the Touhy regulations. The State cannot be found to have violated Rule 25.03(h) for failing to obtain the substance of the federal investigation from Detective Flaugher when he would have been prohibited

---

[8] Detective Leopold attested that Detective Flaugher "is a detective in the [St. Louis Metropolitan Police Department] intelligence unit and that at the time, they were working with ATF to do follow-up investigations with gun owners." Moreover, the October 15, 2018 interview with Quinn was memorialized in an ATF report, not a St. Louis police report, further demonstrating that Detective Flaugher's role was to assist with a federal investigation.

under the Touhy regulations from disclosing the investigative results without prior authorization from the United States Department of Justice. The trial court plainly erred in finding the State violated Rule 25.03 under these circumstances, and this plain error resulted in manifest injustice. The charges the trial court erroneously dismissed here were of the utmost gravity—second-degree murder, first-degree robbery, and ACA stemming from the coordinated ambush and execution-style murder of a victim—and society has a public-safety interest in the prosecution of these types of crimes. To erroneously dismiss such serious charges undermines faith in the criminal justice system, which we find results in manifest injustice or a miscarriage of justice. See Jackson-Kuofie, 646 S.W.3d at 316-17; see also State v. A.S., 648 S.W.3d 862, 866 (Mo. App. W.D. 2022) (finding reversible plain error and manifest injustice when trial court dismissed criminal charges with prejudice relying on inapplicable rule).

Point granted.

## Point II

In its second point on appeal, the State argues the trial court plainly erred in dismissing the charges against Nixon with prejudice for a speedy-trial violation, resulting in manifest injustice. We agree.

Nixon concedes that she never filed a formal request for a speedy trial, but rather she premised her speedy-trial claim on the State's alleged continuing discovery violation. Because we find the State did not violate Rule 25.03(h), the associated speedy-trial claim must fail as well. The delay here was based on both parties' and the trial court's misunderstanding of the limitations of the State's and the trial court's jurisdiction to demand compliance with a request for information from ATF, a federal law enforcement

13

agency that was not a party to this case. The trial court did not have jurisdiction over the information demanded from ATF, and, unless the appropriate United States Department of Justice official authorized disclosure of the ATF report, the parties would have to proceed to trial without it. See 28 C.F.R. §§ 16.21(a), 16.22(a); Touhy, 340 U.S. at 468. Nixon based her motion to dismiss on the assertion that she could not fairly proceed to trial without the ATF report, and yet that further delays to allow the State to disclose this ATF report would violate her right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments. Nixon's basis for her motion to dismiss with prejudice was incorrect on its face, and the trial court plainly erred in granting it, resulting in manifest injustice.

Point granted.

### Conclusion

The trial court's dismissal with prejudice of the pending charges against Nixon on the grounds that the State's continuing discovery violations violated Nixon's right to a fair and speedy trial is reversed, and we remand this matter to the trial court to reinstate the charges.

Gary M. Gaertner, Jr., P.J.

James M. Dowd, J., and
Cristian M. Stevens, J., concur.

14